1  JOSEPH P. RUSSONIELLO (CSBN 44332)
   United States Attorney
2
   BRIAN J. STRETCH (CSBN 163973)
3  Chief, Criminal Division

4  ANDREW P. CAPUTO (CSBN 203655)
   Assistant United States Attorney
5
      450 Golden Gate Avenue, Box 36055
6      San Francisco, California 94102-3495
       Telephone: (415) 436-7004
7      FAX: (415) 436-7234
       Email: andrew.caputo@usdoj.gov
8
   Attorneys for Plaintiff
9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                SAN FRANCISCO DIVISION

13

14  UNITED STATES OF AMERICA,        )    No. 3-08-70090 MEJ
                                     )
15         Plaintiff,                )    **UNITED STATES' RESPONSE TO**
                                     )    **DEFENDANT'S PRE-DETENTION**
16     v.                            )    **HEARING MEMORANDUM**
                                     )
17  DEMETRIUS SMITH,                 )
                                     )
18         Defendant.                )
                                     )
19  ─────────────────────────────── )

20

21         Defendant Demetrius Smith is scheduled for a detention hearing on February 27.  He has

22  filed a lengthy memorandum objecting to the government proceeding by proffer at the hearing.

23  Because the caselaw makes clear that all parties may proceed by proffer, the United States

24  opposes defendant's baseless effort to convert the detention hearing into a full-blown evidentiary

25  hearing.

26                        DISCUSSION

27  I.    The United States is Entitled to Proceed By Proffer at the Detention Hearing.

28         Defendant objects to the government's use of proffers at the detention hearing.  The

UNITED STATES' RESPONSE TO PRE-DETENTION HEARING MEMORANDUM              1
3-08-70090 MEJ

governing statute and caselaw are directly to the contrary and make clear that the government may proceed by proffer at a detention hearing.

A.    The Bail Reform Act Provides for the Use of Proffers and Relaxes Evidentiary Requirements at Detention Hearings.

The Bail Reform Act provides that a defendant may, among other things, "present information by proffer or otherwise" at a detention hearing.  18 U.S.C. § 3142(f).  The Act also greatly relaxes evidentiary requirements at detention hearings, providing that "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."  Id.  Quoting a D.C. Circuit case, defendant notes that while the Act explicitly allows a defendant to proceed by proffer at a detention hearing, "the Act is 'silent upon the question whether the Government may do so."  Def. Memo. at 3 (emphasis by defendant) (quoting United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996)).  But defendant fails to note the Smith court's response to this statutory silence.  Not only did the D.C. Circuit hold in Smith that the government may present evidence by proffer at a detention hearing: it also noted that "[e]very circuit to have considered the matter ... has ... permitted the Government to proceed by proffer" at a detention hearing.  Smith, 79 F.3d at 1210.

The Ninth Circuit is one of the circuits that has considered the matter.  In United States v. Winsor, 785 F.2d 755, 756 (9th Cir. 1986), the Ninth Circuit held squarely that "the government may proceed in a detention hearing by proffer or hearsay."  The court also held that "[t]he accused has no right to cross-examine adverse witnesses who have not been called to testify" at a detention hearing.  Id.  Thus, it is settled law in this circuit – and has been settled law for over 20 years – that the government may proceed by proffer and that a defendant has no right to cross-examine witnesses who do not testify at a detention hearing.

B.    The Fifth and Sixth Amendments Present No Bar to Proceeding by Proffer.

Defendant attempts to unsettle this settled law by arguing that the Fifth and Sixth Amendments bar the use of proffers by the government at a detention hearing.  Defendant's Fifth Amendment argument is easily disposed of, since the Ninth Circuit in Winsor rejected Winsor's argument "that due process requires a defendant in a pretrial detention hearing be afforded rights

1    of confrontation and cross-examination." Id.  In other words, the Ninth Circuit has long

2    established that there is no general Fifth Amendment right to cross-examine witnesses or to bar

3    the government from proceeding by proffer at a detention hearing.[1]  Moreover, defendant has

4    failed to present any adequate, specific-to-this-case factual basis for mandating that government

5    witnesses testify and be cross-examined at the detention hearing in this specific case.

6        Defendant's argument under the Sixth Amendment has no more merit than his argument

7    under the Fifth.  He claims that under Crawford v. Washington, 541 U.S. 36 (2004), the Sixth

8    Amendment's confrontation clause bars the use of proffers and hearsay evidence at a detention

9    hearing.  But magistrate judges of this court have repeatedly rejected this very same argument.

10   Last year, in a reported decision, Judge Zimmerman held that "[n]othing in Crawford requires or

11   even suggests that it be applied to a detention hearing under the Bail Reform Act" and noted that

12   a detention hearing "has never been considered to be part of the [criminal] trial" to which the

13   Sixth Amendment's confrontation rights attach.  United States v. Bibbs, 488 F. Supp. 2d 925,

14   926 (N.D. Cal. 2007).[2]  During 2006, Judge Laporte and Judge Chen each also held that there is

15

16       [1]    United States v. Hall, 419 F.3d 980 (9th Cir. 2005), and United States v. Comito,

17   177 F.3d 1116 (9th Cir. 1999), on which defendant relies, are not relevant here because they do
     not address pretrial detention hearings and instead deal with supervised release revocation

18   hearings.  The distinction is important, since (as we describe below) detention hearings are
     purely regulatory proceedings.  Supervised revocation hearings are not purely regulatory

19   proceedings and instead have a penal nature.  Even if Hall and Comito were relevant here, they
     would conflict directly with Winsor's square holding that the government is entitled to proceed

20   by proffer and hearsay at a detention hearing.  To the extent defendant seeks to have Winsor

21   overruled based on Hall, Comito, or any other case, that is a request properly addressed to the
     Ninth Circuit, not this Court.

22

23       [2]    Defendant attacks Judge Zimmerman's decision in Bibbs at some length, claiming

24   that it "grossly misstates" the applicable law.  Def. Memo. at 12-13.  He argues that Judge
     Zimmerman mis-cites United States v. Salerno, 581 U.S. 744, 746-52 (1987), for the proposition

25   that "a detention hearing is not a 'criminal prosecution' to which the Sixth Amendment applies."
     Def. Memo. at 13.  But Salerno surely did hold that "pretrial detention under the Bail Reform

26   Act is regulatory, not penal ... ." Salerno, 481 U.S. at 746.  It follows, then, that the Sixth
     Amendment's confrontation clause does not apply to detention hearings, since the confrontation

27   right attaches at trial, not during regulatory, non-penal, pretrial proceedings.  See infra at 4
     (citing Ritchie and Littlesun).  Defendant's further claim that Salerno fails to address "the issue

28   of Government proffers" at a detention hearing, Def. Memo. at 13 n.3, ignores the facts that the

no Sixth Amendment right to cross-examine witnesses at a detention hearing, since detention proceedings are regulatory rather than penal. United States v. Henderson, No. CR 05-0609 JSW (May 31, 2006) (attached as Exhibit 1); United States v. Wade, No. CR 06-0287 MHP (July 19, 2006) (attached as Exhibit 2). See also United States v. Salerno, 481 U.S. 739, 746 (1987) ("pretrial detention under the Bail Reform Act is regulatory, not penal"). As such, the right to confrontation does not apply. See Pennsylvania v. Ritchie, 480 U.S. 39, 52 (1987) (Sixth Amendment's "right to confrontation is a trial right") (emphasis in original);[3] United States v. Littlesun, 444 F.3d 1196, 1199 (9th Cir. 2006) ("Crawford speaks to trial testimony") (emphasis added).[4] The D.C. Circuit has specifically rejected the argument that permitting the government to proceed by proffer at a detention hearing violates a defendant's "right under the Sixth Amendment to confront his accusers." Smith, 79 F.3d at 1210. The Ninth Circuit's decision in Winsor also undercuts defendant's Sixth Amendment argument. While the Winsor court did not reference the Sixth Amendment directly, apparently because the defendant there failed to argue under the Sixth Amendment, the Ninth Circuit did reject Winsor's arguments that allowing the government to proceed in a detention hearing by proffer or hearsay violated his "rights of confrontation and cross-examination." Winsor, 785 F.2d at 756.

        C.        The Court Should Not Order Production of Witnesses as a Matter of Discretion.

        Finally, defendant argues that even if the government generally is permitted to offer

---

government did in fact proceed by proffer at the detention hearing in Salerno and did prevail against the constitutional challenges by the defendant in that case.

[3]     Defendant attempts to distinguish Ritchie by arguing that Ritchie "did not address the question of whether the defendant has a right to cross-examine adverse witnesses in pretrial hearings." Def. Memo. at 7 n.2. But the same is true for Crawford, the case on which defendant seeks to rely.

[4]     There are at least two problems with defendant's efforts to rely on United States v. Abuhamra, 389 F.3d 309 (2d Cir. 2004), for his Sixth Amendment arguments. First, Abuhamra addresses the Sixth Amendment's right to public trial, not its right to confrontation. Second, the Abuhamra court noted that "the presentation of evidence at bail hearings may be more informal than at probable cause and suppression hearings" and made no suggestion that there is an constitutional problem with that "informal" presentation of evidence. Id. at 323-24.

1    evidence by proffer at a detention hearing, the Court nevertheless should exercise discretion to

2    require the United States to produce witnesses at the detention hearing here.  Def. Memo. at 18.

3    Defendant offers no specific basis for why the Court should take this extraordinary step of

4    ordering a full-blown evidentiary hearing, other than to note that "this is a serious case ... ."  Id.

5    In other words, without presenting any specific factual basis defendant asks this Court to

6    override the rule established by the Ninth Circuit in Winsor that "the government may proceed in

7    a detention hearing by proffer or hearsay."  Winsor, 785 F.2d at 756.  There is no basis for such

8    an action.

9            Defendant does claim that barring the use of a government proffer is appropriate in this

10    case because the government bears the burden of proof.  Def. Memo. at 18.  But the government

11    bears the burden of proof at all detention hearings.  To the extent this case differs from a generic

12    detention case, it is because it is a presumption case in which defendant bears the burden of

13    production in order to rebut the statutory presumption that no release conditions can adequately

14    mitigate the flight risk and risk of danger to the community that defendant presents.  See 18

15    U.S.C. § 3142(e) (establishing statutory presumption against release in cases under the

16    Controlled Substances Act carrying a maximum prison term of ten years or more).  Especially

17    since the burden of producing evidence rests squarely on defendant's shoulders here, there is no

18    basis to bar the United States from proceeding by proffer.

19                                        CONCLUSION

20            For the foregoing reasons, the United States respectfully asks the Court to follow the

21    Ninth Circuit's decision in Winsor and permit the government to proceed by proffer at the

22    detention hearing.

23

24    DATED: February 25, 2008              Respectfully submitted,

25                                         JOSEPH P. RUSSONIELLO
                                           United States Attorney

26

27    _____
                                                    /s/
28                                         ANDREW P. CAPUTO
                                           Assistant United States Attorney

UNITED STATES' RESPONSE TO PRE-DETENTION HEARING MEMORANDUM          5
3-08-70090 MEJ

1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                         NORTHERN DISTRICT OF CALIFORNIA

8                            SAN FRANCISCO DIVISION

9   UNITED STATES OF AMERICA,          )        No.:  CR 05-0609 JSW
                                        )
10                    Plaintiff,        )
                                        )        **ORDER OF DETENTION**
11          v.                          )        **PENDING TRIAL**
                                        )
12                                      )
    LEONARDO HENDERSON,                 )
13                                      )
                      Defendant.        )
14  _____)

15  **I.      INTRODUCTION**

16          Defendant Leonardo Henderson was arraigned on an indictment charging him with being

17  a felon in possession of a firearm on May 11, 2006 before the Honorable Elizabeth D. Laporte,

18  United States Magistrate Judge.  At the request of the government upon its proffer of a serious

19  risk that the defendant would flee based on his attempt to elude arrest when police sought to

20  affect a traffic stop of a car in which he was a passenger holding a gun, the Court ordered a

21  detention hearing.  See 18 U.S.C. § 3142(f)(2)(A).  On May 18, 2006 at 9:30 a.m., the Court held

22  the detention hearing.  The defendant was present and represented by Geoffrey Hansen,

23  Assistant Federal Public Defender.  Assistant United States Attorney Gregg W. Lowder

24  represented the United States.

25          Pretrial Services submitted a report recommending detention, based upon both a serious

26  risk that the defendant would flee and that the risk of danger to the community or persons in the

1   community.  Among other factors, Pretrial Services pointed to the defendant's numerous

2   criminal convictions, several of which involved violence; the defendant's repeated parole and

3   probation violations, many of which involved new criminal conduct; the bench warrants issued

4   for the defendant, which might indicate a failure to appear as ordered, although other

5   explanations were possible as well; and the defendant's failure to abide by the conditions of his

6   current parole.

7       Upon consideration of the Pretrial Services report, proffers of the government orally and

8   in writing and arguments of counsel, the Court finds by a preponderance of evidence that there

9   exists a serious risk the defendant will flee if released and that no condition or combination of

10  conditions of release will reasonably assure the appearance of the defendant as required.  On this

11  basis the Court orders the defendant detained.

12      The Court additionally finds by clear and convincing evidence, based upon the Pretrial

13  Services report, proffers of the government and arguments of counsel, that the defendant's

14  release will endanger the safety of other persons and the community and that no condition or

15  combination of conditions of release will reasonably assure the safety of other persons and the

16  community.  This finding of dangerousness presents a separate, independent basis for detention.

17  The Court also orders the defendant detained on this basis.  Even if the Court did not also find

18  danger, however, the Court would detain the defendant based on flight risk alone.

19      The present order supplements the Court's findings at the detention hearing and serves as

20  written findings of fact and statement of reasons as required by 18 U.S.C. section 3142(i).

21  **II.    DISCUSSION**

22      The Court first must decide two threshold issues raised by the defendant: whether the

23  Court may consider the issue of danger to the community even though the defendant has not

24  been charged with a crime of violence or other grounds under section 3142(f)(1) and the

25  detention hearing was triggered by the risk of flight alone; and whether this defendant has a right

26  to have the government proceed through live testimony rather than proffer and to cross-examine

1   the government's witnesses.

2   **A.    The Court Must Consider Evidence Of Danger And May Order Detention On The Alternate Ground That The Defendant Poses A Danger To The Community Even Where The Sole Basis For Requesting A Detention Hearing Was Flight Risk.**

3

4

5   The defendant argues that this Court is prohibited from considering evidence of the

6   danger to the community that he might pose and from detaining him based on that ground

7   because the Government requested a detention hearing on the ground of flight risk alone, and

8   because he was not charged with a crime of violence or any other of the specified grounds set

9   forth in section 3142(f)(1).  Neither the Bail Reform Act of 1984, 18 U.S.C. sections 3141-50,

10  nor case law in the Ninth Circuit dictates that result.

11  The Bail Reform Act requires courts to hold a detention hearing under certain

12  enumerated circumstances, including "upon motion of the attorney for the Government in a case

13  that involves . . . a crime of violence . . . or . . . a serious risk that such person will flee."  18

14  U.S.C. § 3142(f).  The purpose of the hearing is to determine whether any release conditions

15  "will reasonably assure the appearance of such person as required and the safety of any other

16  person and the community . . . ."  Id.  The defendant here was not charged with a crime of

17  violence or eligible for a detention hearing on other grounds set forth in section (f)(1).  Rather,

18  the government moved for pretrial detention and the Court agreed to set a detention hearing

19  solely on the serious risk that the defendant will flee.

20  Section 3142(g) sets forth mandatory factors that the Court must consider in a detention

21  hearing:

22          The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning–(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
23
24  (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including– . . . past conduct, history relating to drug or alcohol abuse, criminal history,
25  and record concerning appearance at court proceedings; and whether at the time of the current
26  offense or arrest, the person was on [release] pending trial, sentencing, appeal or completion of a sentence for [another offense]; and (4) the nature and seriousness of the danger to any person or

Detention Order: Leonardo Henderson          3

1    the community that would be posed by the person's release. . . .

2    Thus, a plain reading of this statute requires the Court to consider all these factors at a detention

3    hearing even though the defendant was not charged with a crime of violence. The statute does

4    not indicate that only certain factors should be examined depending on the ground for the

5    hearing. Rather, it instructs courts to consider all the factors set forth. If Congress intended

6    courts only to consider the factor of danger to the community in cases where a detention hearing

7    was set on the grounds set forth in sub-section (f)(1), it could have said so. Further, by

8    restricting the circumstances in which a hearing may properly be held and then requiring release

9    of all other defendants, the statute narrows the category of defendants eligible for detention.

10        Defendant relies on cases from the First and Third Circuits holding that a court may not

11   order pretrial detention on grounds of danger alone when the detention hearing was set based on

12   flight risk and not danger. See United States v. Ploof, 851 F.2d 7 (1st Cir. 1988); United States

13   v. Himler, 797 F.2d 156 (3d Cir. 1986). The government mistakenly argues that in these cases,

14   the United States did not seek a detention hearing on the ground of risk of flight. In Ploof, the

15   government moved for a hearing under both (f)(1) and (f)(2), but the court detained the

16   defendant only on the ground that he was a danger to the community. 851 F.2d at 10. In Himler,

17   the government moved for detention on risk of flight, and while the magistrate judge detained

18   the defendant on both flight and danger, the district court affirmed the detention order solely on

19   danger and made no finding on flight. 797 F.2d at 158. In another case the defendant relies on,

20   United States v. Byrd, 969 F.2d 106, 107 (5th Cir. 1992), the Fifth Circuit cited Ploof and Himler

21   before concluding that a "detention hearing can only be held in a case that involves a crime or

22   circumstance set out in § 3142(f) of the [Bail Reform] Act." Id. at 110. Unlike in Ploof and

23   Himler, however, the parties in Byrd had stipulated that the defendant was not a flight risk, and

24   although the government moved for detention on grounds that the defendant was a danger to the

25   community, it failed to offer any evidence of danger at the hearing.

26        Defendant correctly points out that the Ninth Circuit in United States v. Twine concluded

Detention Order: Leonardo Henderson        4

1  that a defendant charged as a felon in possession, which it determined was categorically not a

2  crime of violence, could not be detained based solely on a finding of dangerousness, without

3  reference to any of the triggers for a detention hearing.  344 F.3d 987 (9th Cir. 2003) (citing

4  Byrd, Ploof, and Himler).  In Twine, however, the Court did not necessarily need to reach the

5  question presented here of whether, when a detention hearing of one accused of being a felon in

6  possession is triggered by risk of flight, a clear and convincing showing of dangerousness may

7  support detention at the hearing.  In Twine, the magistrate judge had not specified whether the

8  hearing was triggered by flight or danger, and ordered the defendant detained based on danger

9  alone.  The district court upheld the detention based on danger to the community and also held

10 alternatively that the crime charged was a crime of violence.  344 F.3d at 987.  Neither the

11 magistrate judge nor the district court judge made a finding that the defendant posed a serious

12 risk of flight.  The Ninth Circuit reversed on both grounds, holding that the crime of felon in

13 possession categorically is not one of violence for purposes of the Bail Reform Act, without

14 addressing whether a hearing could have been triggered by flight risk.  Thus, Twine did not

15 address the mandatory language of section 3142(g) requiring consideration at bail hearings of the

16 potential danger to the community in the context of a detention hearing based on flight.

17 **B.    Absent Any Indicia Of Unreliability, The Court May Rely On
              Proffers Offered At The Detention Hearing.**

18

19        The defendant also argues that he is entitled to cross-examine witnesses under both the

20 Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth

21 Amendment.  First, the Court concludes that no such right exists under the Sixth Amendment.

22 Under the Confrontation Clause, criminal defendants have the right to confront "testimonial"

23 witnesses during their criminal prosecution.  See Crawford v. Washington, 541 U.S. 36 (2004).

24 By contrast, a detention hearing under the Bail Reform Act is a regulatory proceeding, not a

25 penal one.  See United States v. Salerno, 481 U.S. 739, 746 (1987); see also United States v.

26 Perry, 788 F.2d 100, 117 (3d Cir. 1986) ("Although the preventive detention determination is

Detention Order: Leonardo Henderson          5

1    made incidental to a criminal prosecution, commitment on the basis of dangerousness to the

2    community is civil, not criminal").  Moreover, the Ninth Circuit has squarely held that "the

3    government may proceed in a detention hearing by proffer or hearsay."  United States v. Winsor,

4    785 F.2d 755, 756 (9th Cir. 1986) (citing United States v. Cardenas, 784 F.2d 937, 938 (9th Cir.

5    1986)); see also United States v. Littlesun, 444 F.3d 1196, *8 (9th Cir. 2006) ("Crawford speaks

6    to trial testimony, not sentencing").

7         Second, even the cases that the defendant cites emphasize that courts have discretion

8    whether to accept proffers or require live testimony and cross-examination, and generally only

9    go beyond proffers when circumstances indicate that the proffers are insufficiently reliable on

10   crucial points.  See United States v. Hammond, 44 F. Supp. 2d 743, 746 (D. Md. 1999) ("[C]ase

11   law supporting detention upon government proffers in no way requires a judicial officer to

12   accept or accredit proffered evidence, nor does that case law assume that proffers in lieu of live

13   testimony are appropriate in every case [but it] supports the discretion of the reviewing judicial

14   officer to require the presentation of evidence. . . ."); United States v. Comito, 177 F.3d 1166,

15   1168, 1171-72 (9th Cir. 1999) (district court should have afforded opportunity for cross-

16   examination where defense counsel proffered based on interview of key witness whose original

17   hearsay accusations formed the basis for an increased penalty for  supervised release violation

18   that the witness had recanted and admitted that she had lied to police).

19        Thus, although there may indeed be circumstances where a defendant has a limited right

20   to due process to cross-examine because the government's proffer is unreliable, no such

21   circumstances exist here.  During the detention hearing, the Court asked whether the defendant

22   had any factual basis for arguing that the government's proffers were unreliable.  The

23   defendant's counsel declined the opportunity to make a proffer on this point, arguing instead that

24   requiring a defendant to do so as a prerequisite for cross-examination would violate his right

25   against self-incrimination, particularly when a defendant and the arresting officers were the sole

26   witnesses.  The Court questions whether there might not be some other indicia of unreliability

Detention Order: Leonardo Henderson          6

that a defendant could proffer, such as a prior history of inaccurate statements by a particular

arresting officer.  In any case, here, in addition to the arresting officers, government proffered

that two other witnesses, the driver and another passenger, were in the car when police attempted

to stop the vehicle and these witnesses told the police that the defendant told the driver not to

stop because he had an outstanding warrant.  The defense could have interviewed these

percipient witnesses and if their accounts cast doubts on the accuracy of the government's

proffer, made a proffer on that basis.  The defense did not do so.  The defendant accordingly has

given this Court no reason to suspect that the government's proffer was unreliable.

### C.    Balancing the 18 U.S.C. section 3142(g) Factors

As stated above, the Bail Reform Act of 1984 sets forth four factors which the Court

must consider in determining whether pretrial detention is warranted.  These factors are

paraphrased as follows:

> (1)  the nature and seriousness of the offense charged;
>
> (2)  the weight of the evidence against the person;
>
> (3)  the history and characteristics of the person including, among other
> considerations, employment, past conduct and criminal history, and records of
> court appearances; and
>
> (4)  the nature and seriousness of the danger to any person or the community that
> would be posed by the person's release.

18 U.S.C. § 3142(g).

With regard to the first factor, the nature and seriousness of the offense charged, although

it is not itself a crime of violence, it is a serious offense in light of the defendant's efforts to

avoid detection and his background of four convictions for violent crimes in little more than ten

years.  The nature of the offense is reflected in the oral and written proffers of the government.

The proffers indicate that uniformed police officers in a marked patrol car used their lights and

Detention Order: Leonardo Henderson          7

1    sirens to attempt to stop a car shortly after midnight for several Vehicle Code violations.  The

2    police followed the car for several blocks with its lights and sirens on, but the car did not yield.

3    The car slowed at one point and the defendant opened the rear passenger door and started out,

4    but, seeing the police, got back in the car and closed the door.  The car proceeded on, eventually

5    going several blocks.  The defendant did the same thing a second time as the car again slowed

6    down but did not stop.  The car turned a last corner and continued on, then stopped near mid-

7    block.  The defendant again opened the rear door, got out and started running.  Two officers

8    chased the defendant on foot and, while right behind the defendant, saw him reach into his

9    waistband area and pull out a handgun and throw it.  One officer stopped and recovered the

10   handgun, which was loaded.  The foot chase continued until an officer drew a firearm on the

11   defendant.  The defendant stopped and dropped to his knees.  He put his left hand in his

12   waistband area.  Officers immediately grabbed each arm.  The defendant resisted the pulling of

13   his left hand out of his waistband, a struggle ensued and the defendant was ultimately overcome

14   and arrested.  The defendant was determined to have an outstanding parole violation warrant.

15       Police interviewed the driver and the front passenger of the car after giving them their

16   *Miranda* rights, and both gave statements.  The front passenger, Jerri Martin, stated that they had

17   just been picked up the defendant at a Bart Station when the police attempted to stop their car.

18   The defendant ordered her boyfriend, the driver of the car, not to pull over because the defendant

19   had a warrant.  The driver, Juan Daniel Rodriguez, told the police a similar story and added that

20   as he started to pull over, he saw the defendant pull a firearm from his waist and the defendant

21   told Rodriguez to keep going because he had a warrant.  While the defendant was preparing to

22   get out of the car, Rodriguez saw the defendant trying to put the gun under the seat.  Rodriguez

23   told the defendant that he had to take his gun with him.

24       The Court finds these facts significant to the detention decision because, among other

25   things, they indicate that the defendant knew he had a warrant out for his arrest and did not

26   surrender himself.  Rather, his reaction upon encountering police was to flee to avoid capture by

Detention Order: Leonardo Henderson          8

the police and to resist when ultimately captured. His resistance upon capture was consistent with his record for convictions of battery upon public safety officials, as discussed below. This conduct alone supports a finding by a preponderance of the evidence that the defendant poses a risk of flight. The Court also finds that the struggling and resistance of the defendant when caught, given the circumstances in which he knew he had a parole warrant, in conjunction with his criminal history discussed below, supports by clear and convincing evidence that the defendant is a danger to the community.

The second factor of the weight of the evidence points slightly in favor of detention. <u>See</u> <u>Winsor</u>, 785 F.2d at 757. However, it is the least important factor to be considered. <u>See</u> <u>Cardenas</u>, 784 F.2d at 939.

The third factor, the defendant's history and characteristics, provide further evidence that he is a flight risk as well as a danger to the community. Defendant's criminal history is particularly informative. Based on the Pretrial Services report, the defendant has had a long, essentially continuous history of criminal conduct resulting in convictions followed by probation and parole violations. Since 1993, the defendant has suffered seven convictions on six different dates. Four convictions, each on a separate date, involved elements of violence, including one conviction for robbery, two convictions for battery on police or emergency personnel, and his most recent conviction, in 2003, for battery involving domestic violence. The defendant has performed poorly on probation, having his grants of probation modified eight different times to add additional custodial time, and having his probation revoked four times. Both of the defendant's grants of probation following felony convictions resulted in revocations and sentences to prison.

The government proffered that the defendant also performed poorly on parole, having his parole revoked at least four times, in 1998, 1999, 2000 and 2002. His 2002 parole revocation was then followed in 2004 by the revocation of his felony probation and another prison commitment. At the time of his arrest in this case, the defendant had an outstanding parole

Detention Order: Leonardo Henderson          9

1   warrant.  The defendant's parole officer was interviewed for the Pretrial Services report and

2   stated that the defendant failed to report on parole and left a program, and the officer opined that

3   the defendant's parole performance was "extremely poor."  The defendant's criminal history, as

4   reflected in the Pretrial Services report, also indicated that he had several bench warrants issued

5   for him in 2003 and 2004.

6        The defense argued the defendant had no proven failures to appear, and poor

7   performance on probation or parole fails to bear on whether the defendant would appear as

8   required.  The Court believes that the defendant's lack of amenability to supervision is acutely

9   demonstrated by his probation and parole performance and that the defendant's pattern of failure

10  to adhere to conditions of release creates an enhanced risk in the future that he will not appear as

11  required, whether or not he has done so in the past.  In short, the defendant's history indicates

12  that he lacks the kind of reliability that would reasonably assure the defendant's appearance as

13  ordered or the safety of the community.  In conclusion, the Court finds by a preponderance of

14  evidence that no conditions or combination of conditions will reasonably assure the defendant's

15  appearance as required, based on both the defendant's attempt to elude and resist arrest in

16  connection with the current offense and his outstanding parole warrant, as well as his criminal

17  history.  The Court also finds, based on the defendant's history, his characteristics and his

18  resistance to arrest, by clear and convincing evidence that no condition or combination of

19  conditions of release will reasonably assure the safety of the community.  On each basis the

20  Court orders the defendant detained.

21       Accordingly, pursuant to 18 U.S.C. § 3142(i), IT IS ORDERED THAT:

22       (1) the defendant be, and hereby is, committed to the custody of the Attorney General for

23  confinement in a corrections facility separate, to the extent practicable, from persons awaiting or

24  serving sentences or being held in custody pending appeal;

25       (2) the defendant be afforded reasonable opportunity for private consultation with his

26  counsel; and

Detention Order: Leonardo Henderson            10

1    (3) on order of a court of the United States or on request of an attorney for the

2  government, the person in charge of the corrections facility in which the defendant is confined

3  shall deliver the defendant to an authorized Deputy United States Marshal for the purpose of any

4  appearance in connection with a court proceeding.

5

6  Dated: May 31, 2006                           *Elizabeth D. Laporte*

7                                                ELIZABETH D. LAPORTE
                                                 United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Detention Order: Leonardo Henderson        11

1  KEVIN V. RYAN (CSBN 118321)
   United States Attorney
2
   MARK L. KROTOSKI (CSBN 138549)
3  Chief, Criminal Division

4  ANDREW P. CAPUTO (CSBN 203655)
   Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California  94102
        Telephone:  (415) 436-7004
7       Facsimile:   (415) 436-7234
        E-mail: andrew.caputo@usdoj.gov
8
   Attorneys for Plaintiff
9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO DIVISION

13  UNITED STATES OF AMERICA,        )    No.: CR 06-0287 MHP
                                     )
14                  Plaintiff,       )
                                     )    **ORDER OF DETENTION**
15           v.                      )    **PENDING TRIAL**
                                     )
16                                   )
    BOBBY WADE,                      )
17                                   )
                    Defendant.       )
18  _____ )

19          This matter came before the Court on July 17, 2006, for a detention hearing.  Defendant,

20  Bobby Wade, was present and represented by Chief Assistant Federal Public Defender Geoffrey

21  D. Hansen.  Assistant United States Attorney Drew Caputo appeared for the United States.

22          Pretrial Services submitted a report to the Court and the parties that recommended

23  detention, and a representative of Pretrial Services was present at the hearing.  The Government

24  requested detention, and Defendant opposed.  Proffers and arguments regarding detention were

25  submitted by the parties at the hearing.

26

DETENTION ORDER
CR 06-0287 MHP

1    For the reasons set forth in this Court's Order of Detention Pending Trial dated 12/9/05

2    in *U.S. v. Henderson*, CR 05-0672 MHP and Judge Laporte's Order of Detention Pending Trial

3    dated 5/31/06 in *U.S. v. Henderson*, CR 05-0609 JSW, the Court finds that the Sixth Amendment

4    right of confrontation does not apply to detention hearings, but that general principles of Due

5    Process applies pursuant to *U.S. v. Comito*, 177 F.3d 1166 (9th Cir. 1999) and *U.S. v. Winsor*,

6    785 F.2d 755, 757 (9th Cir. 1986). For the reasons stated on the record, the factors relied upon

7    by the Court in finding flight risk are based on undisputed facts and documented evidence. The

8    Court has not relied on evidence of questionable reliability where the truth-seeking function of

9    this Court's determination would be substantially enhanced by the presentation of live witnesses

10   subject to cross examination.

11   Upon consideration of the facts, proffers and arguments presented, the Court finds by a

12   preponderance of the evidence that no condition or combination of conditions of release will

13   reasonably assure the appearance of Defendant as required. Accordingly, the Court concludes

14   that Defendant must be detained pending trial in this matter.

15   The present order supplements the Court's findings at the detention hearing and serves as

16   written findings of fact and a statement of reasons as required by 18 U.S.C. § 3142(i)(1).

17   The Bail Reform Act of 1984, 18 U.S.C. §§ 3141–50, sets forth four factors that the

18   Court must consider in determining whether pretrial detention is warranted. These factors are:

19       (1) the nature and circumstances of the offense charged (§ 3142(g)(1));

20       (2) the weight of the evidence against the person (§ 3142(g)(2));

21       (3) the history and characteristics of the person including, among other

22       considerations, character, employment, family, and past conduct and criminal

23       history (§ 3142(g)(3)); and

24       (4) the nature and seriousness of the danger to any person or the community that

25       would be posed by the person's release (§ 3142(g)(4)).

26   With regard to the first factor, the nature and circumstances of the offense charged,

DETENTION ORDER
CR 06-0287 MHP                           2

1   Defendant is accused of unlawful possession of a firearm and ammunition, in violation of 18

2   U.S.C. § 922(g)(1).  It is uncontested in this case that Defendant had to be apprehended by the

3   police after a foot chase.  While there may be a dispute as to the events leading up to the chase,

4   the fact that Defendant had to be apprehended after a chase was not disputed.  This fact militates

5   in favor of detention here, as it demonstrates risk of flight.

6          The second factor, the weight of the evidence, is considered the least important.  The Bail

7   Reform Act neither requires nor permits a pretrial determination of guilt.  *United States v.*

8   *Gebro*, 948 F.2d 1118, 1121–22 (9th Cir. 1991).  The Court notes that according to the arresting

9   officers, during the chase, Defendant threw a sock containing a loaded .38 caliber revolver onto

10  the ground.  The Court accords little weight, however, to this proffer.

11         The third factor, the history and characteristics of Defendant, supports detention.

12  Defendant has a recent conviction in 2005 for evading a police officer.  According to the police

13  report, he led police on a high speed automobile chase for several miles, then fled on foot.  He

14  also has used a series of aliases in his contacts with law enforcement officers over the years,

15  utilizing six (6) different names in his contacts with police.  He was convicted in 2003 of False

16  Identification to Peace Officer.  Defendant has suffered six (6) felony and two (2) misdemeanor

17  convictions in the last seven (7) years.  In 2005, he violated his parole and was sent to Pelican

18  Bay.  Defendant's community ties further support detention here, as he lacks a stable

19  employment and residential history.  He has not presented any responsible adults to serve as

20  sureties.

21         For the fourth factor, the nature and seriousness of danger to the community, the Court

22  makes no specific findings because the United States sought detention solely based on flight risk.

23         Accordingly, based on the evidence presented at the hearing, the Court finds by a

24  preponderance of the evidence that no condition or combination of conditions of release will

25  reasonably assure the appearance of Defendant as required.

26

DETENTION ORDER
CR 06-0287 MHP                          3

1    Pursuant to 18 U.S.C. § 3142(i), IT IS ORDERED THAT:

2    (1) Defendant be, and hereby is, committed to the custody of the Attorney

3    General for confinement in a corrections facility separate, to the extent

4    practicable, from persons awaiting or serving sentences or being held in custody

5    pending appeal;

6    (2) Defendant be afforded reasonable opportunity for private consultation with his

7    counsel; and

8    (3) on order of a court of the United States or on request of an attorney for the

9    government, the person in charge of the corrections facility in which Defendant is

10   confined shall deliver defendant to an authorized Deputy United States Marshal

11   for the purpose of any appearance in connection with a court proceeding.

12

13

14   Dated: July 19, 2006

                              HON. EDWARD M. CHEN

15                                 United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

DETENTION ORDER
CR 06-0287 MHP             4