Michael P. Thorman, State Bar No. 63008
BONJOUR, THORMAN, BARAY & BILLINGSLEY
24301 Southland Drive, Suite 312
Hayward, CA 94544
(510) 785-8400
michael@btbandb.com

Attorneys for Defendant
Demetrius Smith

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>DEMETRIUS SMITH<br><br>Defendant._____/ | No. CR-08-00131 PJH<br><br>MOTION TO DISCLOSE INFORMANT<br><br>Date: May 14, 2008<br>Time: 1:30 p.m.<br>Court: Hon. Phyllis J. Hamilton |

## INTRODUCTION

Defendant Demetrius Smith is charged in a one-count indictment with a violation of 21 U.S.C. § 841 (a)(1), possession with intent to distribute crack cocaine. The crack cocaine, amounting to 11.8 grams, was found in the pocket of a pair of jeans hanging in the closet of his bedroom. The drug was found during a search pursuant to a search warrant that was issued on the basis on information from a confidential informant. The informant had provided information that Mr. Smith was in the process of dealing marijuana, not crack cocaine.

Mr. Smith admits possession of the crack cocaine but claims that it was for his own personal use and not possessed with intent to distribute. As to this defense, the informant would be relevant and helpful because the informant had knowledge that Mr. Smith dealt marijuana, not

crack cocaine. For this reason, and by this motion, Mr. Smith seeks the name and locator information for this informant so he/she can be produced as a witness.

## STATEMENT OF FACTS

On June 29, 2007, Officer Michael Nelson of the San Francisco Police Department signed a search warrant affidavit which sought a warrant for the search of 1226 Eddy St., San Francisco, California.[1] The information in the affidavit was primarily based on information conveyed to Officer Nelson by Insp. Philpott (who is not further identified but is by inference a San Francisco police officer). Insp. Philpott told Officer Nelson the following information.

Insp. Philpott met with a person he described as a Confidential Reliable Informant (CRI) within five days of June 26, 2007. The CRI said he had observed Demetrius Smith inside his residence at 1226 Eddy St. with more than a pound and a quarter of marijuana. The CRI knew that Smith intended to sell or distribute the marijuana because Smith told that to the CRI. The CRI also claimed to see two digital scales and packaging material that is commonly used to package marijuana or methamphetamine. The CRI said that Smith uses the 1226 Eddy St. address as a distribution point for drug sales. The CRI identified a picture of Demetrius Smith.

Officer Nelson then stated that he did his own investigation to determine that Smith listed the 1226 Eddy St. address as his address of record for his driver's license. Nelson said he has also personally observed Smith go into and out of that residence. He also learned that Smith has a prior state conviction for possession for sale of marijuana.

Based on this information, Officer Nelson sought a warrant to search 1226 Eddy St., opining that the felony offense of possession of marijuana for sale would be found at that location. A warrant was issued on June 29, 2007.

On July 6, 2007, Officer Nelson and 16 other San Francisco police officers went to 1226 Eddy to execute the search warrant. On the way, they observed the defendant walking on the street and they detained him. They searched his person and found $658 in his right front pants pocket and 1.38 grams of marijuana in his front jacket pocket.

---

[1] A copy of the affidavit is attached as Exhibit A.

During the search of the residence, officers found 11.8 grams of crack cocaine in two plastic baggies and 12 pills of MDMA (ecstasy) in one plastic bag in the pants pocket of a pair of jeans hanging in Mr. Smith's bedroom closet. Also in the bedroom was six plastic baggies containing 94.3 grams of marijuana, a digital scale, and a box of plastic baggies. Mr. Smith was later questioned by the police and asked what he thought the officers might have found at his residence. He said "weed." They then told him about the crack cocaine and pills, and he ultimately admitted that those also belonged to him.

Demetrius Smith admits that he was trafficking in marijuana, and in fact pled guilty to possession for sale of marijuana in state court based on this incident. He also admits he possessed the crack cocaine found in his jeans but denies that he possessed it for sale.[2] Mr. Smith seeks disclosure of the name and locator information for the CRI because it is reasonably apparent that the CRI can help prove that Mr. Smith was not selling crack cocaine.

## ARGUMENT

### I. The identity of the informant must be disclosed because the informant's testimony would be relevant and helpful to Mr. Smith's defense.

Rules regarding informant disclosure are well-settled. As the Court stated in *United States v. Sanchez*, 908 F.2d 1443, 1451-52 (9th Cir. 1990):

> The government has a limited privilege to withhold the identity of a confidential informant. *United States v. Williams*, 898 F.2d 1400, 1402 (9th Cir. 1990). An informant's confidentiality serves important law enforcement objectives. *Roviaro v. United States*, 353 U.S. 53, 59, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957). Determining whether to reveal an informant's identity
>
>> calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.
>
> Id. at 62. Although the informer's privilege must give way when the disclosure of the informant's identity "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," id. at 60-61, the burden is on the movant to demonstrate the need for disclosure. *United States v. Johnson*, 886 F.2d at 1122. The "mere suspicion that information will prove helpful is insufficient to require disclosure." *Id.* (citing *United States v. Buffington*, 815 F.2d 1292, 1299 (9th Cir. 1987)); see also *United States v.*

---

[2] See declaration of Demetrius Smith, attached as Exhibit B.

*Tousant*, 619 F.2d 810, 813 (9th Cir. 1980) ("Mere speculation about what the informer's testimony might be is not sufficient."); *United States v. Trejo-Zambrano*, 582 F.2d 460, 466 (9th Cir.) (Movant "must do more than speculate that disclosure will prove helpful."), cert. denied, 439 U.S. 1005, 99 S. Ct. 618, 58 L. Ed. 2d 682 (1978).

In the present case, while possession is clearly shown based on the location of the crack cocaine and Mr. Smith's admission to possession of it, the purpose of his possession is not clear at all. Proof of intent to distribute is entirely circumstantial, and many of those circumstances (like the digital scales, the money in Mr. Smith's pocket and the packaging materials) are equally if not more consistent with marijuana sales than crack cocaine sales.

Under these facts, the informant's testimony is vital to Mr. Smith's defense. Mr. Smith does not merely speculate that the informant's testimony will prove helpful; the information set forth in the affidavit shows it to be so. The informant knew Mr. Smith well enough to be inside his house, to see a large amount of marijuana, and to have Mr. Smith admit to him that he planned to sell the marijuana. The search warrant affidavit makes no mention of the informant seeing or Mr. Smith discussing the distribution of crack cocaine. The affiant states no opinion that a search of Mr. Smith's residence would reveal the possession of crack cocaine. The apparent absence of any sight or discussion of crack cocaine by the informed insider supports the defense that the crack cocaine seized was not possessed for purposes of sale or distribution.

While the informant's testimony is likely relevant and helpful to the defense, the defense concedes that the CRI in this case neither actively participated in nor was a percipient witness to the acts underlying the prosecution. *Roviaro v. United States, supra.* Nonetheless, because the defense has made a threshold showing of need, this Court must conduct an *in camera* hearing to determine whether the informant's apparent value to the defense in borne out. *See, United States v. Amador-Galvin*, 9 F.3d 1414,1417 (9th Cir. 1993).

///
///
///
///

## CONCLUSION

For the reasons set forth herein, defendant respectfully requests his motion for the disclosure of the name and locator information of the informant be granted.

DATED: April 15, 2008                              Respectfully Submitted,

_____
Michael P. Thorman

# EXHIBIT A

# Statement of Probable Cause of Officer Michael D. Nelson #1676

My name is Michael D. Nelson; I am currently employed as a police officer in and for the City and County of San Francisco, California. I have been so employed for more than eleven years. I am currently assigned to the Gang Task Force. I have worked in this capacity for over two years. My past assignments include Bayview Station for over four years, as well as Northern Station for over four years. My assignments at these stations have included working in patrol and in an undercover capacity. I was also assigned to Ceasefire for six months, which is a plainclothes unit that investigated various gang related activities in the City and County of San Francisco's Bayview and Ingleside Districts.

Included in my present duties are the investigation of crimes and the enforcement of laws related to street gangs. This includes the enforcement of all laws related to the illegal possession, possession for sale, and use of illegal narcotics and controlled substances as well as the possession and use of illegal weapons (firearms). My training includes the Basic Narcotics Course taught while attending the San Francisco Police Academy, and ongoing instruction while assigned to the Patrol Division, the Ceasefire Unit, and Gang Task Force. I have successfully completed the following narcotics, firearms, and criminal investigations related courses over the past ten years:

1) BATI Interview and Interrogation course 40 hrs
2) Interview and Interrogation Institute 40 hrs
3) Undercover tactics/Informant Management 8hrs
4) Robbery Apprehension Team Basic course 24 hrs
5) C.G.I.A./A.T.F. Street Gang Seminar 40 hrs
6) Robert Presley Institute of Criminal Investigation (Core Course) 76 hrs
7) California Attorney Generals Terrorism and Gang Conference
8) California Criminal Intelligence Bureau Gang Seminar 8 hrs
9) National Institute for Truth Verification Computer Voice Analyzer Course 48 hrs

Additionally I am a member of the California Narcotics Officer Association (CNOA) and The California Gang Investigators Association (CGIA). I have periodically attended gang and narcotic related training seminars sponsored by these associations to receive updated training regarding gang related matters.

During my course of employment I have participated in numerous arrests and search warrants related to street gangs, narcotics and firearms. Additionally I have authored numerous police reports relating to various types of gang crimes. This would also include interviewing witnesses and victims, as well as collecting and booking evidence. I am familiar with the way the criminals who commit these violent and heinous violations of the law perform their tasks.

DS0053

The area of Larch Way from Laguna St. to Buchanan St. as well as the area of Turk St. from Webster St. to Laguna St, also the area of Eddy St. from Webster St to Laguna St. and Willow Alley from Buchanan St. to Laguna St. is an area known to the officers of the Northern Police District, Gang Task Force and other specialized police units as an area that is controlled by a street gang known as "EDDY ROCK". This area is considered the "EDDY ROCK gang territory". This gang is well known by law enforcement for it's involvement in street crimes that range from narcotics sales, robbery and burglaries to various forms of firearm violations that range from illegal possession of a firearm to more violent acts such as homicide using a gun. There have also been numerous narcotic and firearm related arrests with-in this general area. I know this from previous contacts, arrests and

(7/97)

interviews with subjects who live and frequent this area. The below encounter described in this affidavit occurred within this territory.

For some time now the older members of the EDDY ROCK street gang bring into the gang territory bulk amounts of illegal narcotics to either sell personally and or "piece out"/give the product to the younger members and associates of the EDDY ROCK street gang to sell. The money earned from the sale of illegal narcotics is used to buy more narcotics as well as weapons and other items that benefit the gang. Only persons who are accepted by the gang (members and or associates) are allowed to operate their illegal enterprises within the gang's territory. If a person not recognized and or accepted by the gang would try to operate their illegal enterprise within this gang territory they would be physically harmed and possibly murdered. This sends a strong message to all persons in and around the area of the gang territory and to other rival gangs who would try to come into their territory to make money. Gang members gain notoriety with in the community for their ability to ruthlessly victimize persons who live in and around the area of their "territory" without the fear of reprisal from law enforcement and or rival gangs. This in turn instills fear in the local community affecting law enforcement's ability to obtain witnesses to crimes with in that community.

Within five days of 06/26/07 Insp. Philpott met with a tested, paid, confidential reliable informant (hereafter referred to as a CRI). This CRI's information has proven reliable numerous time's. Three of these occasions are as follows. The CRI's information led to the arrest of a suspect that was wanted for homicide, as well as the recovery of stolen property taken during the commission of a burglary and he/she gave the location to where a gun was being stored which was inside of an area of government housing. I request that the issuing magistrate not disclose the identity of the informant for it will jeopardize the informant's physical well-being and destroy his/her future usefulness to law enforcement personnel. The CRI is not currently on probation or parole. The CRI told Insp. Philpott that he/she is coming forward because he/she "Wants to make his community a safer place for the children."

The CRI told Insp. Philpott within five days of 06/26/07 he/she observed the person who he/she knows as Demetrius Smith inside of 1226 Eddy St. with an amount of marijuana he/she described as being more than one and a quarter pounds. The CRI described the amount of marijuana, which he/she saw Demetrius Smith holding. The description he/she gave would be an amount which would be considered for sale and not personal use. The CRI knows this marijuana because he/she has seen marijuana numerous times, and Demetrius Smith told him/her it was marijuana. The CRI knows that Demetrius Smith intends to sell or distribute the marijuana because he told the CRI he intended to do so. The CRI also saw packaging material in the form of what he/she described as "Numerous gram baggies", which are small ziplock baggies that persons who distribute illicit narcotics such as marijuana and methamphetamine use to package the material in one gram or less quantities. He/She also saw two digital scales which were located in the kitchen area. Insp. Philpott questioned the CRI as to his/her knowledge of how marijuana is used and its current prices. The CRI readily admitted to using marijuana on numerous occasions in the past. Based on my training and experience, I believe that the CRI answered his questions accurately. The CRI told Insp. Philpott that Demetrius Smith has been using 1226 Eddy St as a distribution point. Demetrius Smith is considered a high-ranking member of the EDDYROCK Street Gang. The CRI told Insp. Philpott, Demetrius Smith distributes illegal narcotics regularly from 1226 Eddy St. to the younger members and or associates of the EDDY ROCK street gang who in turn distributes the product at the street level. HE/SHE said Demetrius Smith does this on a weekly basis.

DS0054

The CRI told Insp. Philpott that the members of the EDDY ROCK street gang hang out in this residence and around this residence on a regular basis. He/She also told Insp. Philpott that Demetrius Smith uses 1226 Eddy St. as a "Cook House" (A place to process and package illegal narcotics). He/She has seen various members of this gang going in and out of the residence at all times of the day and night. The CRI told Insp. Philpott that the best time to find the gang members inside of the residence packaging and or selling the illegal narcotics is in the early morning hours and or at night. This is because it is harder for gang members who are outside at night to detect the presence of law enforcement to avoid arrest, and because it is harder to detect the presence of rival gang members who may be trying to shoot and or kill the members of the EDDY ROCK street gang by using the cover of darkness to ambush them.

The CRI was shown a San Francisco Sheriffs Department booking photograph of the person who we know to be Demetrius Smith, AKA MANMAN, and SF # 572522. He/she told us that this was the same person that showed him the amount of marijuana inside of the residence at 1226 Eddy St. Insp. Philpott also showed the CRI a book of photographs that document the persons who we believe are members of the EDDY ROCK street gang. He/She also picked the photographs of Steve Johnson SF# 536716, Paris Moffett SF#523297, Damien Brooks SF#501309, and Leslie Howard SF# 546630 as persons he/she has seen going in and out of the residence within five days of 06/26/07. All four suspects are documented members and or associates of the EDDY ROCK street gang.

I found through my investigation that Demetrius Smith has the address 1226 Eddy St. listed as the address of record for his California driver's license (D2962119) and his San Francisco County arrest record. I as well as other members of the Gang Task Force have found during our observations and investigations of the EDDY ROCK street gang that Demetrius Smith uses this address as his primary place of residence. I have personally observed him enter end exit this residence numerous times over the past month.

I reviewed Demetrius Smith criminal history and learned that he has suffered one prior felony conviction for 11359 H&S (Possession of marijuana/hashish for sale) on 04/22/02. Smith's RAP sheet shows arrests other arrests for firearms, narcotics, burglary, and possession of stolen property.

I believe, based on Inspector Philpott and his CRI's statements, that there is direct and circumstantial evidence that Demetrius Smith committed the felony offence of 11359 H&S (Possession of marijuana/hashish for sale), a felony. Which is apart of a larger criminal conspiracy that empowers the EDDY ROCK street gang. I believe Demetrius Smith prepares marijuana for sale by weighing and packaging it inside of 1226 Eddy St. He then distributes the packaged product to the younger members and associates of the EDDY ROCK street gang who in turn sells the product at the street level.

I respectfully submit that there is probable cause to believe that Demetrius Smith committed the violation section, 11359 H&S (Possession of marijuana/hashish for sale) a felony.

Accordingly, I respectfully submit that there is probable cause to believe that an amount of marijuana as described in this affidavit will be found in the residence of 1226 Eddy St. with in the City and County of San Francisco. Additionally I believe that evidence of street gang membership or affiliation with the Eddy Rock street gang, and indicia will be discovered at this residence.

Based on the above information I request that the issuing magistrate authorize the search of:

1. The person of **Demetrius Smith** described as a Black Male, 5'07", 150 lbs, with the date of birth of **02/12/82**, further identifiable by the San Francisco Arrest Number of **572522** and California DMV number of **D2962119**.

2. The persons of any documented EDDY ROCK gang member or associate as listed on Exhibit "B" attached hereto and incorporated by this reference who is with-in the premises and or entering/exiting the premises of 1226 Eddy St. San Francisco CA at the execution of this search warrant. ✳

3. The premise located at 1226 Eddy St. San Francisco Ca (Further described as a condominium, Yellow in color with a Orange door and no garage. It is located on the North side of Eddy St. The numbers "1226" are located on the front of the dwelling affixed to the front door.

Wherefore, affiant respectfully requests that a search warrant be issued, commanding the immediate search of the persons and premise above designated for the property or things above described and that such property be brought before a magistrate or retained as provided in Section 1536 of the California Penal code.

_____
AFFIANT

NOW 1676

✳ All the Persons in EX. B are Personally Known to me to be EDDY ROCK GANG Members, That Presence AT 1226 EDDY ST. Would BE to ACTIVELY Participate in THE GANG AND Further Criminal GANG Conduct INCluding THE UNLAWFUL SALE OF MARIJUANA

NOW 1676

Sworn to as true and subscribed before me
On _June 29_, 2007

_____
The Honorable, Judge of the Superior Court
City and County of San Francisco, California

DS0056

(7/97)

"Exhibit A"

**1. MARIJUANA**, and paraphernalia commonly associated with the storage and use of marijuana, consisting in part of and including, smoking pipes, sifters, alligator clips, baggies, scales and other weighing devices, rolling machines, cigarette papers. All documentary evidence as defined in California Penal Code 1524(f) including, all U.S. currency, buyer lists, seller lists; and records of narcotic trafficking activities including summary sheets, bank statements, canceled checks, deposit slips, check stubs, applications and receipts for cashiers checks, money orders, traveler's checks, bank wires, bank drafts, and bank transfers, inventory records, journals, cash expenditure and receipt records; transaction records relating to investment activity involving real estate, securities, mutual funds; transaction records which reflect net worth expenditures, including loan applications, credit cards and related items, as well as other notes, papers and records which record nominee names, dates, amounts of narcotics and money and identities of narcotics supplies and customers. All articles of personal property tending to establish and document sales of marijuana, consisting in part, of articles of personal property tending to establish the identity of persons in control of premises, vehicles, storage areas or containers located at, or nearby, or related to the subject premises where marijuana may be hidden. All storage areas or containers located at, or nearby, or related to the subject premises where marijuana may be hidden; all articles of personal property tending to establish the location of such premises, vehicles, storage areas or containers where marijuana may be found or secreted, consisting of and including but not limited to, utility bills and receipts, rent receipts, canceled mail envelopes and keys. All firearms and weapons commonly related to narcotics trafficking. All computers and related or similar devices, and



DS0057

information on hard or floppy drives, which may contain any documents or records described above. All video equipment and tapes, and all telephone devices and machines, cellular equipment, and telephone calls to identify persons engaged in narcotics' related activities and to record narcotics' related conversations. All property subject to forfeiture as defined in California Health and Safety Code 11469 et seq. (7/97)

DS0058



# EXHIBIT B

Case 3:08-cr-00131-PJH   Document 20   Filed 04/16/2008   Page 13 of 14

## DECLARATION OF DEMETRIUS SMITH

I, Demetrius Smith, declare:

1. I am the defendant in this action.

2. The crack cocaine that was found in a pocket of my jeans in this action was possessed by me for my own personal use.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14 day of April, 2008 at Oakland, California.

_Demetrius Smith_
Demetrius Smith