JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

ANDREW P. CAPUTO (CSBN 203655)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7004
   FAX: (415) 436-7234
   Email: andrew.caputo@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 08-0131 PJH |
| | ) | |
| Plaintiff, | ) | **UNITED STATES' OPPOSITION TO** |
| | ) | **DEFENDANT'S MOTION TO** |
| v. | ) | **DISCLOSE INFORMANT** |
| | ) | |
| DEMETRIUS SMITH, | ) | Date: May 14, 2008 |
| | ) | Time: 1:30 p.m. |
| Defendant. | ) | |
| | ) | |

     Defendant Demetrius Smith has moved for an order disclosing the identity of the

confidential reliable informant ("CRI") who provided a tip that the police used to obtain a search

warrant.  The CRI was a mere tipster and was not present during the charged offense.  There is

no evidence that the CRI's testimony would assist the defense.  In any event, defendant could

secure the testimony of the CRI or a similarly situated witness without need for disclosure of the

CRI's identity.  The public interest in confidentiality of sources far outweighs whatever value the

CRI's identification might give the defense.  The United States respectfully asks the Court to

deny defendant's motion and his request for an <u>in camera</u> hearing.

**FACTS**

San Francisco police officers searched defendant's home at 1226 Eddy Street on July 6, 2007.  In his bedroom they found a digital scale, a box of plastic baggies, and three types of illegal drugs: MDMA (or "Ecstasy"), marijuana and, most significantly, 11.8 grams of crack cocaine.  The indictment in this case charges defendant with possessing the 11.8 grams of crack cocaine with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1).

Defendant admits to possessing the crack cocaine but claims he possessed it for personal use rather than for sale.  Smith Declaration ¶ 20 (attached to Def. Mot. as Exh. B).  He faces the challenging task of convincing a jury that an amount of crack cocaine sufficient for 50 or more doses was possessed for use but not for sale.  That defense is made even more difficult by certain additional facts.  While defendant's bedroom contained items useful for selling the crack (such as the digital scale and packaging material), it did not contain items useful for using the crack (such as a crack pipe).

The search of defendant's home was conducted pursuant to a search warrant.  The affidavit for that search warrant related a tip received from a CRI approximately two weeks prior to the search.  Nelson Aff. (attached to Def. Mot. as Exh. A) at DS0054.  The CRI described seeing defendant inside defendant's home with more than a pound of marijuana, packaging material, and digital scales.  Id.  The CRI told the police that defendant stated his intention to sell the marijuana.  Id.  The CRI also stated that defendant "distributes illegal narcotics regularly" from his home and also uses his home "as a 'Cook House' (A place to process and package illegal narcotics)."  Id. at DS0053.

Claiming that the CRI's testimony would assist his defense, defendant has moved for an order requiring the government to identify the CRI.

**DISCUSSION**

The United States enjoys a limited privilege to withhold an informant's identity.  See Roviaro v. United States, 353 U.S. 53, 59-61 (1957).  "This privilege serves several important law enforcement objectives, including encouraging citizens to supply the government with information concerning crimes."  United States v. Henderson, 241 F.3d 638, 645 (9th Cir. 2000).

The burden is on the defendant to show a need for the informant's identity that is sufficient to defeat the limited privilege. <u>United States v. Decoud</u>, 456 F.3d 996, 1009 (9th Cir. 2006). "A mere suspicion that the informant has information which will prove relevant and helpful to his defense, or that will be essential to a fair trial," is insufficient to compel disclosure. <u>Henderson</u>, 241 F.3d at 645 (internal quotation marks omitted). Where a defendant claims that disclosure is necessary, courts balance the public interest in protecting the flow of information against the defendant's right to prepare his defense. <u>United States v. Rowland</u>, 464 F.3d 899, 909 (9th Cir. 2006). In conducting this balancing test, courts "examine[s] three factors: (1) the degree of the informant's involvement in the criminal activity; (2) the relationship between the defendant's asserted defense and the likely testimony of the informant; and (3) the government's interest in nondisclosure." <u>United States v. Gonzalo Beltran</u>, 915 F.2d 487, 488-89 (9th Cir. 1990).

I.    <u>The CRI Was Simply a Tipster Who Had No Involvement In the Charged Criminal Act.</u>

The first <u>Gonzalo Beltran</u> factor is "the degree of the informant's involvement in the criminal activity." <u>Id.</u> at 489. In the pending indictment, defendant is charged only with possessing crack cocaine on or about July 6, 2007, the date of the search. There is no evidence that the CRI had any involvement in defendant's alleged criminal activity on that date. Instead, the CRI's sole connection to the case is that he provided a tip about defendant's marijuana dealing that occurred approximately two weeks prior to the alleged criminal act charged in the case. Defendant concedes that the CRI "neither actively participated in nor was a percipient witness to the acts underlying the prosecution." Def. Mot. at 4. Thus, all parties appear to agree that the CRI here was simply a tipster who had no involvement in the charged criminal act and who only provided the police with information they used to obtain a search warrant.[1]

Courts have regularly denied motions to disclose an informant's identity where the informant's connection to the charged criminal activity is attenuated or nonexistent, as it is here. For example, in <u>Decoud</u> the Ninth Circuit affirmed a district court's denial of a disclosure motion in part because the informant there "was not involved in any transaction contained in

---

[1]    Defendant does not contest the validity of the search.

1    [the] indictment" and because the informant's main involvement in the case was in providing

2    information that allowed the government to secure a wiretap.  <u>Decoud</u>, 456 F.3d at 1009, 1002.

3    The Court held that the informant's involvement was "insufficient to compel disclosure of the

4    informant's identity."  <u>Id.</u> at 1009.  The same result should occur in the instant case, since the

5    <u>Decoud</u> informant's role (providing information that resulted in a wiretap) is analogous to the

6    role of the CRI in the instant case (providing information that resulted in a search warrant).

7        A similar case is <u>United States v. Williams</u>, 898 F.2d 1400, 1401-02 (9th Cir. 1990),

8    where the informant told the police that he had bought drugs from the defendant.  The police

9    obtained a search warrant based on the informant's tip and found cocaine in the defendant's

10   home when they executed the warrant; the defendant was charged with possessing the cocaine

11   found in the home.  <u>Id.</u> at 1401.  In affirming the district court's denial of Williams's motion to

12   disclose the informant, the Ninth Circuit held that the informant's testimony would not be

13   relevant and helpful to the defense within the meaning of <u>Roviaro</u>.  <u>Id.</u> at 1402.  Among the

14   reasons the Court cited for this conclusion were the facts that the defendant was not charged with

15   the drug transactions he had had with the informant and that "[t]he extent of the informant's

16   usefulness was to establish probable cause to search as a result of which the cocaine was seized."

17   <u>Id.</u>

18       Many other cases reach the same result as <u>Decoud</u> and <u>Williams</u>, based on the same logic

19   that an informant with little or no involvement in the charged criminal acts need not be

20   identified.  <u>United States v. Valmer</u>, 245 Fed. Appx. 720, 722 (9th Cir. 2007) (Valmer

21   "committed the charged offenses with no direct participation by the CI, and therefore, the CI was

22   not involved in Valmer's criminal activity to a large degree"); <u>United States v. Gil</u>, 58 F.3d

23   1414, 1421 (9th Cir. 1995) (informant was "a mere tipster"); <u>United States v. Johnson</u>, 886 F.2d

24   1120, 1122 (9th Cir. 1989) (the "government did not charge [the defendant] based on the

25   transaction with the informant," so the defendant "failed to meet his burden to demonstrate a

26   need for the information"); <u>United States v. Wong</u>, 886 F.2d 252, 255-56 (9th Cir. 1989) (courts

27   consider "the degree of involvement by the informant in the charged crime" in deciding whether

28   to order disclosure; because there was "no evidence to suggest that the informant was the only

1  percipient witness to any critical event, ... [t]he informant's testimony would either have been

2  cumulative or insignificant"); United States v. Buras, 633 F.2d 1356, 1360 (9th Cir. 1980) ("This

3  is not a case where the informant was a witness to the crime.  Neither is this a case where the

4  informant must have participated in the crime.  Although the informant's tip precipitated the

5  investigation that led to Buras' arrest, that fact alone is insufficient to compel disclosure of the

6  informant.") (citations omitted); United States v. Gaston, 357 F.3d 77, 85 (D.C. Cir. 2004)

7  ("because the informant neither participated in nor witnessed the offenses," but instead simply

8  provided information leading to issuance of a search warrant, "the district court properly denied

9  the disclosure motion"); United States v. Warren, 42 F.3d 647, 654 (D.C. Cir. 1995) (denying

10  disclosure motion where "the informant's role was limited to providing the information that

11  justified issuance of the search warrant," even though "the informant's testimony might have

12  been helpful to Warren").  These cases are analogous to the instant case and support a conclusion

13  by this Court that the limited role played by the CRI here is insufficient to warrant disclosure.

14  II.     The CRI's Testimony Would Not Assist the Defense.

15      The second Gonzalez Beltran factor inquires into "the relationship between the

16  defendant's asserted defense and the likely testimony of the informant."  Gonzalo Beltran, 915

17  F.2d at 489.  Because the CRI's testimony would not assist defendant's efforts to argue that the

18  50+ doses of crack cocaine he possessed were for personal use rather than for sale, the Court

19  should deny defendant's motion for disclosure.

20      Defendant claims that the CRI "had knowledge that Mr. Smith dealt marijuana, not crack

21  cocaine."  Def. Mot. at 1-2.  But there is no evidence that the CRI knew that defendant did not

22  sell crack cocaine.  There is only defendant's speculation that the CRI might testify to that effect.

23  The caselaw, though, makes clear that mere suspicion that a CRI might offer helpful testimony is

24  insufficient to carry a defendant's burden of proving a need for an informant's testimony that

25  outweighs the public's interest in confidentiality.  Henderson, 241 F.3d at 645.

26      The search warrant affidavit describes the CRI seeing defendant inside his home with

27  marijuana and hearing defendant say he intended to sell it.  Nelson Aff. at DS0054.  The

28  affidavit does not describe the CRI seeing defendant inside his home with crack cocaine and

hearing defendant say he intended to sell it. Defendant claims that this means the CRI "had knowledge that Mr. Smith dealt marijuana, not crack cocaine." Def. Mot. at 1-2. That is a non-sequitur. Assuming for the sake of argument that the CRI neither saw nor discussed crack cocaine during the CRI's visit to defendant's home last June, those facts do not at all mean that defendant was not selling crack cocaine. The issue of crack cocaine might not have come up because the CRI did not ask about it, or because defendant did not offer it (because he was temporarily out of crack cocaine at the time, for example), or for any reason or no reason at all.

Moreover, parts of the search warrant affidavit affirmatively suggest that the CRI believed defendant to be involved in selling more than just marijuana. After describing the CRI seeing the marijuana and discussing its sale with defendant, the affidavit describes the CRI telling a police inspector that defendant "distributes illegal narcotics regularly from 1226 Eddy Street" to the younger members of a street gang, on a weekly basis. Nelson Aff. at DS0054 (emphasis added). If this statement by the CRI was in fact limited to the just-discussed marijuana, the affidavit presumably would have used the word marijuana. But instead it used the broader phrase "illegal narcotics," a phrase which would encompass crack cocaine.

A subsequent passage in the affidavit undercuts even more strongly defendant's speculative claim that the CRI knew that defendant sold only marijuana and did not sell crack cocaine. The affidavit describes the CRI as telling the same police inspector that defendant "uses 1226 Eddy St. as a 'Cook House' (A place to process and package illegal narcotics)." Id. at DS0053. Marijuana, of course, does not require cooking or processing in order to be prepared for sale. Powder cocaine, however, must be cooked in order to be transformed into crack cocaine. Thus, the CRI's reference to cooking and processing "illegal narcotics" affirmatively suggests defendant's involvement in the sale of crack cocaine and contradicts defendant's speculative assertion that the CRI knew defendant did not sell crack cocaine.

The CRI's testimony would do little or nothing to advance defendant's argument that he possessed the crack cocaine for use rather than sale. That is especially so in light of the strong alternative evidence that defendant intended to sell the crack cocaine (as shown, for example, by the sheer amount of crack cocaine he admits he possessed). In analogous circumstances in

1    which an informant's potential testimony was overshadowed by contrary evidence, courts have

2    rejected disclosure motions.  <u>Decoud</u>, 456 F.3d at 1009 (rejecting disclosure where "the

3    informant's non-knowledge would have done little to refute the government's otherwise

4    persuasive evidence of" defendant's guilt and thus was not "essential to the fair determination of

5    [defendant's] case"); <u>Henderson</u>, 241 F.3d at 646 (denying disclosure motion where "disclosure

6    of [the informant's] identity would not have explained away the most convincing evidence of

7    Henderson's guilt"); <u>Wong</u>, 886 F.2d at 256 (denying disclosure where "any assistance provided

8    to the defense" by the informant's testimony "would not have been significant").   This Court

9    should do the same here.

10         A.    <u>Defendant Does Not Need Disclosure In Order to Present His Defense Here.</u>

11         Defendant could raise the exact defense he seeks to advance here without disclosure of

12   the CRI's identity.  This is not a situation in which defendant does not know the CRI.  As the

13   affidavit shows, defendant met with the CRI, brought the CRI into his home, and discussed the

14   sale of marijuana with the CRI.  Defendant knows whom he met with during this time period, so

15   he presumably could call the CRI as a witness at trial even without a court order disclosing the

16   CRI's identity.

17         Defendant may argue that he met with numerous people during this period to discuss

18   selling marijuana and cannot determine which of these people was the CRI discussed in the

19   affidavit.  But that argument would simply serve to undercut his disclosure motion, since it

20   would mean that he has numerous witnesses to choose from and does not need disclosure in

21   order to produce a witness of the type he claims to need.  Where an informant's testimony would

22   be cumulative of other available evidence, that fact has caused courts to deny motions to disclose

23   informants.  <u>United States v. Jaramillo-Suarez</u>, 950 F.2d 1378, 1387 (9th Cir. 1991) (rejecting

24   disclosure where there was "no evidence to suggest that the informant was the only witness to

25   any critical event)"; <u>Wong</u>, 886 F.2d at 256 (rejecting disclosure where "[t]he informant's

26   testimony would either have been cumulative or insignificant" and thus not have been relevant

27   and helpful within the meaning of <u>Roviaro</u>); <u>United States v. Long</u>, 533 F.2d 505, 508 (9th Cir.

28   1976) (rejecting disclosure where informant's testimony would have been "largely cumulative,"

1   among other things).  In <u>Roviaro</u> itself, where the Supreme Court ordered disclosure, the Court

2   repeatedly stressed that the informant at issue there was "the sole participant, other than the

3   accused, in the transaction charged" and thus was in a unique position to advance Roviaro's

4   defense.  <u>Roviaro</u>, 353 U.S. 53, 64 (1957).  By contrast, in the instant case the CRI's status is as

5   one among many who presumably discussed the purchase of marijuana with defendant.

6   III.     <u>There Is A Strong Public Interest in Nondisclosure Here.</u>

7           The third and final <u>Gonzalo Beltran</u> factor assesses "the government's interest in

8   nondisclosure."  <u>Gonzalo Beltran</u>, 915 F.2d at 489.  "An informant's confidentiality serves

9   important law enforcement objectives."  <u>United States v. Sanchez</u>, 908 F.2d 1443, 1451 (9th Cir.

10  1990).  <u>See also United States v. Napier</u>, 436 F.3d 1133, 1136 (9th Cir. 2006) (recognizing "the

11  government's interest in maintaining integrity of ongoing criminal investigations and ensuring

12  the safety of the informant").  The government's interest in confidentiality is especially strong in

13  this case for two reasons.  First, as described in the search warrant affidavit, the CRI here has

14  proven reliable and productive, having previously provided information that led to the arrest of a

15  homicide suspect and the recovery of stolen property and a firearm.  Nelson Aff. at DS0054.

16  The search warrant affidavit specifically requested that "the issuing magistrate not disclose the

17  identity of the informant for it will jeopardize the informant's physical well-being and destroy

18  his/her future usefulness to law enforcement personnel."  <u>Id.</u>  Thus, in light of the CRI's past

19  performance and ongoing value to law enforcement efforts, the government has an especially

20  strong interest in preserving the confidentiality of this source.

21          Second, as indicated by the above reference in the search warrant affidavit to potential

22  physical jeopardy to the CRI, disclosing the identity of this informant would put him or her at

23  significant physical risk.  The affidavit states that defendant is considered to be "a high-ranking

24  member" of "Eddy Rock," a violent criminal street gang that operates in San Francisco's

25  Western Addition.  <u>Id.</u> at DS0053-55.  The affiant's allegations in this regard are corroborated by

26  a December 2007 judgment of the San Francisco Superior Court, which specified defendant to be

27  a member of the Eddy Rock gang and enjoined him and the other gang members from engaging

28  in, among other things, assault, battery, and intimidation.  Exh. 1 (attached) at 9, 5-6.  In light of

1    defendant's documented status as a member of a violent street gang, there would be real physical

2    risk to the CRI if his or her identity were disclosed.

3        The test for informant disclosure is ultimately a balancing test that weighs the harm of

4    disclosure against the benefits. See supra at 3. As just described, the harm from disclosure – in

5    terms of interference with law enforcement efforts and in terms of the informant's safety – would

6    be substantial. By contrast, the benefits of such disclosure would be negligible, in light of the

7    CRI's non-involvement in the charged act, the lack of value of the CRI's testimony to defendant,

8    and the fact that alternative witnesses are almost surely available to the defense. Since the result

9    of this balancing test swings heavily in favor of continued confidentiality, the United States

10   respectfully asks the Court to deny defendant's motion to disclose the CRI's identity. See

11   Wong, 886 F.2d at 257 (affirming district court's denial of disclosure where "the government's

12   strong interest in protecting the valuable resources of the informant in drug investigations"

13   outweighed "the limited benefit that would accrue to the defendants' defense").

14   IV.    The Court Should Deny Defendant's Request for an In Camera Hearing.

15       Defendant claims he has made a threshold showing of need for the informant's testimony

16   that is sufficient to warrant an in camera hearing. Def. Mot. at 4. But as explained above,

17   defendant's showing of need is based on speculation and on the logical non-sequitur that simply

18   because someone buys marijuana, that fact means that the marijuana seller was not also selling

19   crack cocaine. Just as this showing is insufficient to carry defendant's burden of defeating the

20   informant privilege, it is insufficient to require the holding of an in camera hearing.

21       Some Ninth Circuit panels have stated that an in camera hearing is necessary where a

22   defendant makes a minimal threshold showing that disclosure would be relevant to at least one

23   defense. E.g., Henderson, 241 F.3d at 645.[2] But courts regularly deem this relevance standard

24   not to have been met and thus decline to order an in camera hearing. Indeed, courts have denied

25   requests for in camera hearings in cases where defendants have made considerably better

26

27       [2]    But see United States v. Johnson, 886 F.2d 1120, 1122 (9th Cir. 1989) ("[i]t is

28   within the trial court's discretion to hold an in camera proceeding" where a defendant moves to
     disclose an informant).

UNITED STATES' OPP. TO MOT. TO DISCLOSE INFORMANT                    9
CR 08-0131 PJH

showings of relevance than defendant has made here.  In <u>Henderson</u>, for example, the defendant sought disclosure of an informant in service of a defense that he had been framed.  <u>Id.</u> at 645. The Ninth Circuit acknowledged the possibility that disclosure could have helped Henderson argue that "he was set up to take the fall to conceal the identity of the true robber or to get back at him for having helped the police in other cases."  <u>Id.</u> at 645-46.  But the Court nevertheless affirmed the district court's denial of Henderson's request for an <u>in camera</u> hearing because "no matter what evil motives Henderson's informant may have had, disclosure of his identity would not have explained away the most convincing evidence of Henderson's guilt."  <u>Id.</u> at 646.  In <u>Decoud</u>, the district court had denied the defendant's disclosure motion without holding an <u>in camera</u> hearing.  <u>Decoud</u>, 456 F.3d at 1002.  The Ninth Circuit affirmed, despite its conclusion that the informant's testimony "would have been of limited value" to the defendant's defense, because "the informant's non-knowledge would have done little to refute the government's otherwise persuasive evidence of" defendant's guilt.  <u>Id.</u> at 1009.  Defendant in the instant case has a weaker case for disclosure than the defendants in <u>Henderson</u> and <u>Decoud</u> did.  Since the defendants in those cases properly were denied <u>in camera</u> hearings, the Court should deny defendant's request for such a hearing here.

## CONCLUSION

Defendant has failed to carry his burden of showing a need for disclosure of the CRI's identity that outweighs the harm from such disclosure.  Accordingly, we respectfully ask the Court to deny defendant's motion.


DATED: April 30, 2008                    Respectfully submitted,

                                         JOSEPH P. RUSSONIELLO
                                         United States Attorney


                                         _____
                                                    /s/
                                         ANDREW P. CAPUTO
                                         Assistant United States Attorney

ENDORSED FILED
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

DEC 1 8 2007

GORDON PARK-LI, CLERK
BY: __CARLA AMADOR__
Deputy Clerk

1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  ALEX G. TSE, State Bar #152348
   Chief Attorney, Neighborhood and Resident Safety Division
3  JILL CANNON, State Bar #203471
   JENNIFER CHOI, State Bar #184058
4  Deputy City Attorneys
   Fox Plaza
5  1390 Market Street, Sixth Floor
   San Francisco, California 94102-5408
6  Telephone:    (415) 554-3800

7  Attorneys for Plaintiff
   PEOPLE OF THE STATE OF CALIFORNIA

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    CITY AND COUNTY OF SAN FRANCISCO

10                   UNLIMITED CIVIL JURISDICTION

11  PEOPLE OF THE STATE OF                Case No. 464-493
    CALIFORNIA, by and through DENNIS
12  J. HERRERA, City Attorney for the CITY   [PROPOSED] JUDGMENT GRANTING
    AND COUNTY OF SAN FRANCISCO,          PERMANENT INJUNCTION
13
                                          Hearing Date:     December 18, 2007
14              Plaintiff,                 Hearing Judge:    Kaplan
                                          Time:             9:00 a.m.
15          vs.                           Place:            Department 218

16  CHOPPER CITY, a criminal street gang,
    sued as an unincorporated association,   Date Action Filed:  June 21, 2007
17  EDDY ROCK, a criminal street gang,    Trial Date:     Not yet set
    sued as an unincorporated association,
18  KNOCK OUT POSSE, a criminal street    Attachments:
    gang, sued as an unincorporated       Exhibit A, Map of Safety Zones
19  association, and DOES 1 THROUGH 500,  Exhibit B, List of Gang Member for
                                          Service and Enforcement
20              Defendants.

21        Plaintiff People of the State of California's Request for Default Judgment and Permanent

22  Injunction in the above-entitled action came on regularly for hearing at 9:00 a.m. on December 18,

23  2007 in Courtroom 218 of the above captioned Court.  Plaintiff appeared through its counsel of

24  record, Deputy City Attorneys Jennifer Choi and Jill Cannon. Defendants Chopper City criminal

25  street gang, Eddy Rock criminal street gang and Knock Out Posse criminal street gang did not

26  appear. The Honorable Sue M. Kaplan presiding.

27                                                                    DS0328

28
                                        1
    JUDGMENT GRANTING PERMANENT INJUNC., CHOPPER CITY, ET AL.;   n:\code\li\2007\071140\00451880.do

1    Having read and considered the moving papers and evidence filed herein, and having heard

2    the argument of counsel, the Court determines that Plaintiff's Request for Default Judgment and

3    Permanent Injunction is GRANTED.

4    This Court finds by clear and convincing evidence the following against Defendants

5    CHOPPER CITY criminal street gang and KNOCK OUT POSSE criminal street gang:

6    • the gangs were properly served with the Summons and Complaint in this matter, and

7    provided with an opportunity to be heard;

8    • the gangs failed to answer or otherwise respond to the Summons and Complaint;

9    • The gangs were properly noticed and served with the Request for Default;

10    • Default was properly entered against both gangs on November 5, 2007;

11    • the gangs are criminal street gangs as defined in Penal Code Section 186.22;

12    • the gangs are criminal street gangs as defined for the purpose of a gang abatement

13    injunction in *People v. Englebrecht* (2001) 88 Cal.App.4th 1236, 1258;

14    • the gangs have created a public nuisance by their conduct, their activities and the

15    conduct and activities of their members in the Chopper City/Knock Out Posse Safety

16    Zone.[1]

17    This Court finds by clear and convincing evidence the following against Defendants EDDY

18    ROCK criminal street gang:

19    • the gang was properly served with the Summons and Complaint in this matter, and

20    provided with an opportunity to be heard;

21    • the gang failed to answer or otherwise respond to the Summons and Complaint;

22    • The gang was properly noticed and served with the Request for Default;

23    • Default was properly entered against the gang on November 5, 2007;

24    _____

[1] The Chopper City/Knock Out Posse Safety Zone includes that area of San Francisco that is
25    bordered by and includes Ellis Street to the North, Divisadero Street to the West, Turk Street to the
South, and Steiner Street to the East. The KOP/Chopper City Safety Zone includes the sidewalks on
26    both sides of each of these boundary streets and extends to the outside of any sidewalk on each of
these boundary streets. The KOP/Chopper City Safety Zone includes the Marcus Garvey, Martin
27    Luther King and Pitts Plaza Public Housing Complexes. *See* Exhibit A to this Order.

28

DS0329

JUDGMENT GRANTING PERMANENT INJUNC., CHOPPER CITY, ET AL.;      n:\code\nfil2007\071140\00451880.do
CASE NO.  464-493                                               c

- the gang is criminal street gang as defined in Penal Code Section 186.22;

- the gang is a criminal street gang as defined for the purpose of a gang abatement injunction in *People v. Englebrecht* (2001) 88 Cal.App.4[th] 1236, 1258;

- the gang has created a public nuisance by its conduct, its activities and the conduct and activities of its members in the Eddy Rock Safety Zone. [2]

**A.    SPECIFIC PROHIBITIONS AGAINST DEFENDANTS CHOPPER CITY, KNOCK OUT POSSE AND THEIR MEMBERS**

**GOOD CAUSE HAVING BEEN SHOWN, IT IS ORDERED** that Defendants CHOPPER CITY Criminal Street Gang and KNOCK OUT POSSE criminal street gang, and all of their members, associates, and persons acting under, in concert with, for the benefit of, at the direction of, or in association with Defendants CHOPPER CITY Criminal Street Gang and KNOCK OUT POSSE criminal street gang, as designated on Exhibit B, the "List of Gang Members For Service And Enforcement Of Permanent Injunction", are enjoined and restrained from engaging in or performing directly or indirectly, any of the following activities in the Chopper City/Knock Out Posse Safety Zone:

1.    **Intimidation:** Confronting, intimidating, annoying, harassing, threatening, challenging, provoking, assaulting, or battering any person known to Defendants KNOCK OUT POSSE and CHOPPER CITY, their members, associates, affiliates, recruits or agents, to be a witness to, a victim of, or a complainant of any activity of the KNOCK OUT POSSE or CHOPPER CITY Criminal Street Gangs;

2.    **Guns or Dangerous Weapons:** (1) possessing any gun, firearm, ammunition, or illegal weapon as defined in Penal Code Section 12020, (2) knowingly remaining in the presence of anyone who is in possession of such gun, firearm, ammunition or illegal weapon, or (3) knowingly remaining in the presence of such gun, firearm, ammunition, or illegal weapon;

---

[2] The Eddy Rock Safety Zone includes that area of San Francisco that is bordered by and includes Ellis Street to the north, Gough Street to the east, Turk Street to the south, and Webster Street to the west. The Eddy Rock Safety Zone includes the sidewalks on both sides of each of these boundary streets and extends to the outside of any sidewalk on each of these boundary streets. This zone includes the Plaza East Public Housing Complex. *See* Exhibit A to this Order.

DS0330

JUDGMENT GRANTING PERMANENT INJUNC., CHOPPER CITY, ET AL.;          n:\coden\li2007\071140\00451880.do
CASE NO.  464-493                                                                                        c

1      3.    **Graffiti or Graffiti Tools:**  Damaging, defacing, or marking any public or private

2    property of another, or possessing spray paint cans, felt tip marker, or other graffiti tools as defined

3    in Penal Code Section 594.2;

4      4.    **Possession and Sale of Controlled Substances:**  Selling, possessing, or using any

5    controlled substance or related paraphernalia, as defined in Health and Safety Code Section 11364,

6    including, but not limited to, rolling papers, smoking pipes of any kind, crack vials, and syringes, (2)

7    knowingly remaining in the presence of anyone selling, possessing, or using any controlled

8    substance or related paraphernalia, or (3) knowingly remaining in the presence of any controlled

9    substance or such related paraphernalia;

10      5.    **Trespassing:**  Being present on any private property, including San Francisco

11    Housing Authority property, except (1) with the prior, <u>written</u> consent of the owner or the owner's

12    agent, or person in lawful possession of the property, or (2) in the physical presence of the owner or

13    owner's agent, or person in lawful possession of the property;

14      6.    **Gang Signs and Gang Symbols:**  Flashing or displaying the following gang signs or

15    symbols with the intent to express gang affiliation, support or allegiance: "Knock Out Posse",

16    "KOP", "KO", "567", "1600", "1600 Block", "Uptown", "Chopper City", "Choppa City", "223",

17    "1800", "1800 Block", the "okay" hand sign (or variations of the hand sign, including using two

18    fingers to form a circle and extending the other fingers out or up and out), the "C" hand sign, and the

19    "thumbs up" hand sign.

20      7.    **Association:**  Standing, sitting, walking, driving, gathering, or appearing anywhere in

21    the public view or in a place accessible to the public with any known member of the KNOCK OUT

22    POSSE or CHOPPER CITY Criminal Street Gang, excluding:  1) when all individuals are inside a

23    school in class or on school business; and 2) when all individuals are inside a church or house of

24    worship. This prohibition against associating with other KNOCK OUT POSSE and CHOPPER

25    CITY gang members applies to all travel to or from school or church or house of worship, and to any

26    congregating before school or church or worship or after school or church or worship.

27

28                                          4                                    DS0331

8.    **Loitering:** Loitering in a public place in a manner and under circumstances manifesting the purpose and with the intent to commit an offense specified in Chapter 6 (commencing with Section 11350) and Chapter 6.5 (commencing with Section 11400) of the Health and Safety Code, in accordance with Health and Safety Code Section 11532(b);

9.    **Gang Recruitment:** Taking any action to recruit gang members for Defendants KNOCK OUT POSSE or CHOPPER CITY Criminal Street Gangs, or making any threats or promises to shoot, stab, strike, hit, batter, injure, assault, disturb the peace, or destroy the personal property of anyone, as an incentive to join KNOCK OUT POSSE or CHOPPER CITY gangs;

10.   **Stopping Members from Leaving Gang:** Stopping a gang member from leaving Defendants KNOCK OUT POSSE or CHOPPER CITY Criminal Street Gangs, or making any threats or promises to shoot, stab, strike, hit, batter, injure, assault, disturb the peace or destroy the personal property of anyone, as an incentive not to leave KNOCK OUT POSSE or CHOPPER CITY gangs; and

11.   **Violation of Laws:** Violating any laws, including, but not limited to, laws prohibiting homicide, robbery, assault, battery, burglary, theft, auto theft, vandalism, graffiti, mischief, trespass, loitering with intent to commit a narcotics offense, possession, use, transportation, and sales of controlled substances.

**B.    SPECIFIC PROHIBITIONS AGAINST DEFENDANT EDDY ROCK AND ITS MEMBERS**

**GOOD CAUSE HAVING BEEN SHOWN, IT IS ALSO ORDERED** that Defendant EDDY ROCK Criminal Street Gang, and all of its members, associates, and persons acting under, in concert with, for the benefit of, at the direction of, or in association with Defendant EDDY ROCK criminal street gang, as designated on Exhibit B, the "List of Gang Members For Service And Enforcement Of Permanent Injunction", are enjoined and restrained from engaging in or performing directly or indirectly, any of the following activities in the Eddy Rock Safety Zone:

1.    **Intimidation:** Confronting, intimidating, annoying, harassing, threatening, challenging, provoking, assaulting, or battering any person known to Defendant EDDY ROCK, its

1  members, associates, affiliates, recruits or agents, to be a witness to, a victim of, or a complainant of

2  any activity of the EDDY ROCK Criminal Street Gang;

3      2.    **Guns or Dangerous Weapons:** (1) possessing any gun, firearm, ammunition, or

4  illegal weapon as defined in Penal Code Section 12020, (2) knowingly remaining in the presence of

5  anyone who is in possession of such gun, firearm, ammunition or illegal weapon, or (3) knowingly

6  remaining in the presence of such gun, firearm, ammunition, or illegal weapon;

7      3.    **Graffiti or Graffiti Tools:** Damaging, defacing, or marking any public or private

8  property of another, or possessing spray paint cans, felt tip marker, or other graffiti tools as defined

9  in Penal Code Section 594.2;

10      4.    **Possession and Sale of Controlled Substances:** Selling, possessing, or using any

11  controlled substance or related paraphernalia, as defined in Health and Safety Code Section 11364,

12  including, but not limited to, rolling papers, smoking pipes of any kind, crack vials, and syringes, (2)

13  knowingly remaining in the presence of anyone selling, possessing, or using any controlled

14  substance or related paraphernalia, or (3) knowingly remaining in the presence of any controlled

15  substance or such related paraphernalia;

16      5.    **Trespassing:** Being present on any private property, including San Francisco

17  Housing Authority property, except (1) with the prior, written consent of the owner or the owner's

18  agent, or person in lawful possession of the property, or (2) in the physical presence of the owner or

19  owner's agent, or person in lawful possession of the property;

20      6.    **Gang Signs and Gang Symbols:** Flashing or displaying the following gang signs or

21  symbols with the intent to express gang affiliation, support or allegiance: "Eddy Rock", "OC",

22  "Paypa Bound", "Downtown", "ER", "E", "PB", "37", "72", "1200" and "rock" symbol.

23      7.    **Association:** Standing, sitting, walking, driving, gathering, or appearing anywhere in

24  the public view or in a place accessible to the public with any known member of the EDDY ROCK

25  Criminal Street Gang, excluding: 1) when all individuals are inside a school in class or on school

26  business; and 2) when all individuals are inside a church or house of worship. This prohibition

27  against associating with other EDDY ROCK gang members applies to all travel to or from school or

DS0333

28

6

1  church or house of worship, and to any congregating before school or church or worship or after

2  school or church or worship.

3      8.    **Loitering:** Loitering in a public place in a manner and under circumstances

4  manifesting the purpose and with the intent to commit an offense specified in Chapter 6

5  (commencing with Section 11350) and Chapter 6.5 (commencing with Section 11400) of the Health

6  and Safety Code, in accordance with Health and Safety Code Section 11532(b);

7      9.    **Gang Recruitment:** Taking any action to recruit gang members for Defendant

8  EDDY ROCK Criminal Street Gang, or making any threats or promises to shoot, stab, strike, hit,

9  batter, injure, assault, disturb the peace, or destroy the personal property of anyone, as an incentive

10  to join EDDY ROCK Criminal Street Gang;

11     10.    **Stopping Members from Leaving Gang:** Taking any action to stop a gang member

12  from leaving Defendant EDDY ROCK Criminal Street Gang, or making any threats or promises to

13  shoot, stab, strike, hit, batter, injure, assault, disturb the peace or destroy the personal property of

14  anyone, as an incentive not to leave EDDY ROCK Criminal Street Gang; and

15     11.    **Violation of Laws:** Violating any laws including, but not limited to, laws prohibiting

16  homicide, robbery, assault, battery, burglary, theft, auto theft, vandalism, graffiti, mischief, trespass,

17  loitering with intent to commit a narcotics offense, possession, use, transportation, and sales of

18  controlled substances.

19  **C.    MODIFICATIONS TO THE INJUNCTION**

20     **IT IS ALSO ORDERED** that this Order shall be subject to modification of any of its terms

21  upon noticed motion of any party or any person named in the "List of Gang Members For Service

22  And Enforcement Of Permanent Injunction", including without limitation motions by the People to

23  add additional persons to be bound by this Order ("Opt In") and motions by individuals bound by

24  this Order to be removed from the list of persons subject to this Order ("Opt Out").

25     / / /

26     / / /

DS0334

27     / / /

28

JUDGMENT GRANTING PERMANENT INJUNC., CHOPPER CITY, ET AL.;    n:\coden\li2007\071140\00451880.do
CASE NO. 464-493                                                                            c

1  **D.    PROCEDURAL MATTERS**

2  **IT IS ALSO ORDERED THAT:**

3      1.    No member of CHOPPER CITY, EDDY ROCK or KNOCK OUT POSSE shall be

4  subject to the provisions of this Order unless said individual has been previously personally served

5  with this Order;

6      2.    Plaintiff, the People of the State of California, shall not be required to post an

7  undertaking pursuant to Code of Civil Procedure section 529(b)(3).

8      3.    Plaintiff waived costs. Each party shall bear its own costs in this action.

9  **IT IS SO ORDERED**

10                                          S. KAPLAN

Dated:    DEC 1 8 2007

11

12                                    JUDGE OF THE SUPERIOR COURT

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                          DS0335

27

28                                8

DS0336

"EXHIBIT A"

DS0337

DS0338

"EXHIBIT B"

1

**Exhibit B**

2

List of Gang Members for Service and Enforcement of Permanent Injunction

3

**CHOPPER CITY GANG MEMBERS**

4

**DENNIS ANDERSON**, DOB 1/12/82 or 1/12/83 or 1/23/83 or 1/22/84[3]

5

**DEON ANDERSON**, DOB 1/12/82 or 1/12/83 or 1/23/83 or 1/22/84

**BYRON CHEEVES**, DOB 6/25/85

6

**DERON CHEEVES**, DOB 11/21/87

**CLARENCE COOK**, DOB 1/24/86

7

**JAMAL GAINES**, DOB, 7/31/86

**DWIGHT HART**, DOB 2/24/87

8

**ANTOINE JOHNSON**, DOB 6/10/83

9

**RICKY ROUNDS**, DOB 12/11/86

**CARNELL TAYLOR**, DOB 6/24/69

10

**KARWARN THORN**, DOB 9/9/83

11

**EDDY ROCK GANG MEMBERS**

12

**DONTAE ALLEN**, DOB 4/10/79

**ANDRE BERNARD**, DOB 2/2/81

13

**MAURICE BIBBS**, DOB 9/22/87

**DESHAWN CAMPBELL**, DOB 8/7/87

14

**MAURICE CARTER**, DOB 6/4/75

15

**RAYMOND DAVIS**, DOB 11/12/79

**ROBERT HARVEY**, DOB 9/29/75

16

**LESLIE HOWARD**, DOB 12/3/79

**DONTAYE HUBBARD**, DOB 6/3/80

17

**KETHAN HUBBARD**, DOB 9/30/81

18

**STEVE JOHNSON**, DOB 3/7/80

**DELARIAN LEE**, DOB 7/5/87

19

**DION MARTIN**, DOB 11/14/88

**PARIS MOFFETT**, DOB 3/26/78

20

**DELSHAWNTE SMITH**, DOB 3/23/80

21

**DEMETRIUS SMITH**, DOB 2/12/82

**JONATHAN SMITH**, DOB 5/16/85

22

**HANNIBAL THOMPSON**, DOB 8/1/87

**DEANDRE WATSON**, DOB 7/17/88

23

///

24

///

25

DS0339

26

[3] Dennis Anderson and Deon Anderson are brothers who have been known to interchange names and various

27

birth dates.

28

9

JUDGMENT GRANTING PERMANENT INJUNC., CHOPPER CITY, ET AL.;    n:\coden\li2007\071140\00451880.do

CASE NO. 464-493    c

## KNOCK OUT POSSE GANG MEMBERS

**JUAN ALLEN**, DOB 8/13/80
**DANA BALL**, DOB 12/12/88
**FLOYD BARROW**, DOB 1/11/80 or 1/18/80[4]
**KILAMANJARO BELL**, DOB 12/8/86
**LAVEAUX DEROSANE, AKA LAVEAUX DEROSANS**, DOB 11/5/77
**JELVON HELTON**, DOB 3/18/88
**BRIAN HILL**, DOB 1/5/81
**DARRELL LUCKETT**, DOB 4/25/84
**TERRY LUCKETT**, DOB 10/6/85
**MARCUS MAYS, AKA MARQUEZ MAYS OR MARQUES MAYS** DOB 1/8/84
**ROBERT MAYS**, DOB 1/30/83
**GARY OWENS**, DOB 3/3/81

DS0340

---

[4] Barrow has used both dates of birth.

JUDGMENT GRANTING PERMANENT INJUNC., CHOPPER CITY, ET AL.;
CASE NO.  464-493

n:\coden\i2007\071140\00451880.do
c