Michael P. Thorman, State Bar No. 63008
BONJOUR, THORMAN, BARAY & BILLINGSLEY
24301 Southland Drive, Suite 312
Hayward, CA 94544
(510) 785-8400
michael@btbandb.com

Attorneys for Defendant
Demetrius Smith

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA                    No.  CR-08-00131 PJH

          Plaintiff,

                              REPLY TO GOVERNMENT
                              OPPOSITION TO MOTION TO
                              DISCLOSE INFORMANT

vs.

DEMETRIUS SMITH                              Date:   May 14, 2008
                               Time:  1:30 p.m.
          Defendant.                       Court:  Hon. Phyllis J. Hamilton
_____/

      In his moving papers, defendant Demetrius Smith claimed that the search warrant
affidavit in this case demonstrates that the person whose information formed the basis for the
issuance of warrant was potentially a material witness on the one critical issue to Mr. Smith's
defense: Whether the crack cocaine he admittedly possessed was possessed with the intent to
distribute it.[1]  He asserted that the informant's apparent intimate and detailed knowledge of Mr.
Smith's marijuana dealing, with no mention of any crack cocaine dealing, made the informant's
apparent usefulness at least worthy of an *in camera* hearing to determine whether indeed the
informant would be helpful to his defense.

_____

    [1]The government erroneously asserts that "defendant is charged only with possessing
crack cocaine . . ." Opposition Brief (hereinafter OB) p. 3:14-15.  If this were the case, this
motion would never have been made.

1

1    In opposition, the government argues that Mr. Smith's claim does not even rise to the

2    level justifying an *in camera* hearing.  In support, it has cited extensive case authority

3    enunciating unassailable legal principles that are factually inapt to the present case.  It has further

4    cited purported facts that are unsupported by any evidence and are misleading as well.  Defendant

5    submits this reply to show that the known facts as well as the case law at the very least justify an

6    *in camera* hearing.

7    **FACTS**

8    The government correctly asserts that denial of a motion to disclose an informant's

9    identity will be upheld in the face of convincing evidence of guilt that would effectually render

10   irrelevant anything the informant might say.  *United States v. Henderson*, 241 F.3d 638, 646 (9th

11   Cir. 2000).  The government then suggests that the known facts show convincing evidence that

12   the crack cocaine was possessed for sale.  A more studied review shows otherwise.

13   The government first asserts that 11.8 grams of crack is "sufficient for 50 or more doses"

14   (OB p. 2:9-10) and the "sheer amount of crack cocaine he admits he possessed" (OB p. 6:28) is

15   inconsistent for personal use.  However, there is no factual support for the claim that 11.8 grams

16   of crack equal 50 or more doses, in violation of Local Criminal Rule 47-2(b), which should

17   therefore be disregarded by this Court.  Even if there were evidence that, for example, crack

18   cocaine is typically sold on the street in .2 or .3 gram amounts, that evidence would not mean that

19   a user would not consume larger amounts if it were available.

20   The government next asserts that the defendant's bedroom contained useful items for

21   selling the crack, such as a digital scale and packaging materials.  (OB p. 2:11-12) It does not

22   claim that these items by appearance or design could only be used in weighing and packaging

23   crack cocaine or whether instead they could be used to support Mr. Smith's marijuana sales

24   activity (along with the over three ounces of marijuana found in the bedroom).  These items are

25   not inconsistent with Mr. Smith's defense and do not provide further evidence of guilt of the

26   conduct charged.

27   It is next asserted that the bedroom did not contain items useful for using crack, such as a

28   crack pipe.  The fact the officers didn't find such an item does not mean that none was there.

1  Further, it might depend on what they were looking for.  According to the Canadian Centre on

2  Substance Abuse web site (http://www.ccsa.ca), "Most crack users use makeshift devices such as

3  pop cans, inhalers, or other metal or glass implements to smoke crack."  The fact that the officers

4  didn't find a "crack pipe" is of little significance.

5       The government next refers to the fact that the affidavit describes the informant as saying

6  that Mr. Smith "distributes illegal narcotics" regularly from 1226 Eddy St.  (OB 6:8-9)

7  According to the government, this terminology suggests that Mr. Smith was involved in

8  distributing more than just marijuana.  However, it is unreasonable to read too much into this

9  phraseology.  It is highly unlikely that this informant, sufficiently steeped in the urban gang and

10  drug culture to get the access he/she claimed to have, would use the term "distribute illegal

11  narcotics."  Further, it begs the question what were the other narcotics.  It would add to the

12  informant's value to the defense if the other narcotics did not include crack cocaine.  This matter

13  would be easily cleared up in an *in camera* hearing.

14       Finally, the government cites the affiant's claim that the informant described defendant's

15  residence as a "Cook House (A place to process and package illegal narcotics)" as evidence

16  suggesting that defendant was distributing crack cocaine, which must be cooked. (OB p. 6:16-24)

17  Absent evidence about what the term "Cook House" means in street slang, we are left with the

18  definition provided in the affidavit - "a place to process and package illegal narcotics."  Such a

19  definition does not exclude processing (removing stems and seeds, for example) and packaging

20  marijuana.  The fact that "cook" suggests another process, in the absence of other definition, does

21  not justify refusing to hold an *in camera* hearing.

22       In sum, the government's claim of overwhelming evidence that the crack in this case was

23  possessed for sale is wrong.  Indeed, the various inferences that can be drawn, both for guilt and

24  for innocence, demonstrate the potential value to the defense of the informant's testimony.

25

26                 **THE *IN CAMERA* HEARING**

27       A defendant need only make a "'minimal threshold showing' that disclosure would be

28  relevant to at least one defense" to justify an *in camera* hearing.  *United States v. Sai Keung*

1  *Wong*, 886 F.2d 252, 256 (9th Cir. 1989).  As the Court stated in *United States v. Spires*, 3 F.3d

2  1234, 1238 (9th Cir. 1993), "[o]ur precedents demonstrate that in disclosure cases an *in camera*

3  hearing is favored procedure. . . . [A]n *in camera* hearing bears little risk of disclosing the

4  identity of the informant and does not jeopardize the government's future use of that individual.

5  Consequently, there is ordinarily no governmental interest to balance against the defendant's in

6  deciding whether to hold an *in camera* hearing."

7       The Ninth Circuit's view favoring *in camera* hearings has resulted in remands following

8  conviction for the failure to hold such hearings in cases where the justification for disclosure was

9  weaker than that in Mr. Smith's case.  For example, in *United States v. Amador-Galvan*, 9 F.3d

10 1414 (9th Cir. 1993), defendants Molina and Amador-Galvan were convicted of conspiracy to

11 possess with the intent to distribute over 5 kilograms of cocaine.  The prosecution theory was that

12 Amador-Galvan drove a vehicle through the border that Customs agent Molina let pass without

13 inquiry, and that Molina lied about the description of the driver.  Both defendants sought

14 disclosure of four informants who might have supported the defense claim that Amador-Galvan

15 was not the driver of the vehicle.[2]  The District Court denied the request for disclosure on the

16 ground that "the defendants did not have any evidence independent of the informants themselves

17 to support the claim . . ." Holding that the District Court erred in not granting an *in camera*

18 hearing based on what the Court called a sufficient threshold showing of need, the Court stated:

19       Given that the Government's theory of prosecution hinges on the assumption that
        Amador-Galvan ws the driver of the car in question, one or more of these four informants
20      could have provided evidence **weakening the government's case.**  For example, if they
        were percipient witnesses, these informants could provide eyewitness testimony; if not,
21      they might still be able to provide information which might lead to a firsthand source or
        circumstantial evidence.  Any such evidence would clearly be 'relevant and helpful' to
22      preparing Amador-Galvan's defense.

23 *United States v. Amador-Galvan*, 9 F.3d at 1417. [Emphasis Added]

24       In *United States v. Spires, supra*, police officers obtained a search warrant for Spires'

25 residence and person based on an informant's tip that Spires sold marijuana and

26

27 _____

28      [2]The opinion does not explain the defendants' basis for their belief that the informants
   might so testify.

4

methamphetamine from his residence.  The search of the defendant's locked bedroom uncovered a veritable arsenal of firearms and various drug paraphernalia.  Officers then discovered various amounts of methamphetamine in different locations in the defendant's truck.  They also found more weapons and handwritten instructions on how to manufacture methamphetamine in the truck.

Defendant sought disclosure of the informant's identity , asserting that the guns and drugs seized belonged to his roommate, not to him.  He further opined in his motion that his roommate was in fact the informant and that if this were in fact the case, it might support a defense that the roommate set him up by planting the contraband.  The District Court denied the motion without an *in camera* hearing but the Ninth Circuit reversed, finding that Spires had made "the requisite minimal showing" and that an *in camera* hearing should have been held.

The present case compares favorably with *Spires* in many important respects.

• The government claims here that the "strong" evidence of possession with intent to distribute could not be overcome by any possible testimony from the informant.[3]  The evidence of Spires' possession in that case was much more compelling, including items found in his **locked** bedroom and in the car he was driving at the time of his apprehension, and the Court still found it error not to grant an *in camera* hearing.

• The government claims that the matters disclosed by the informant indicate that Mr. Smith must know who he/she is and therefore he can call this person as a witness without an order for disclosure.[4]  In *Spires*, the fact that the defendant claimed he knew exactly who the informant was did not prevent the Court from reversing the failure to grant an *in camera* hearing.

• The government argues that the defendant could assert the defense he has raised without

_____

[3]Defendant refutes the so-called strength of the evidence *supra.*

[4]The government suggestion that Mr. Smith doesn't need disclosure if he discussed selling marijuana with numerous people, thus indicating he has numerous witnesses he could call, is surely disingenuous.  Such persons would face serious self-incrimination problems and, if he/she nonetheless testified, would be easily destroyed on cross-examination.  Only a person with inside knowledge who nonetheless came forward to authorities could credibly support defendant's claim.

1   disclosure of the informant.  Spires could have raised the same defense as well in his case, but, as

2   the opinion pointed out, "his contention would be significantly more persuasive if it turned out

3   that the roommate was the confidential informant." *United States v. Spires*, 3 F.3d at 1239.

4   Similarly, Mr. Smith's defense would be significantly more persuasive if it turned out that the

5   informant had no knowledge of Mr. Smith selling crack cocaine.

6        Even a number of the cases cited by the government for the proposition that there was no

7   error in refusing to disclose the identity of an informant who was only a "tipster" involved

8   determinations after an *in camera* hearing was held.  In *United States v. Williams*, 898 F.2d 1400

9   (9th Cir. 1990), discussed by the government at OB p. 4:7-17, the determination that the

10  informant's information would not be helpful or relevant to the defense was only made after **2** *in*

11  *camera* hearings.  In *United States v. Gil,* 58 F.3d 1414 (9th Cir. 1995) (OB p. 4:22-23), denial of

12  disclosure was upheld after the Court reviewed the record of the *in camera* hearing and found the

13  informant "had no information that could form a basis of either exculpatory or inculpatory

14  information."  *Id.* at 1421.  The Court reached the same conclusion after reviewing the *in camera*

15   record in *United States v. Wong*, 886 F.2d 252 (9th Cir. 1989).

16       Cases cited by the government in which disclosure was denied without an *in camera*

17  hearing involve fact scenarios showing the informant's testimony, even if totally favorable to the

18  defendant, could not reasonably undo evidence of guilt.  In *United States v. Henderson*, 241 F.3d

19  638 (9th Cir. 2000), defendant sought identity of the tipster who informed the police that the

20  defendant was committing a series of robberies on the theory that the defendant was "set up" to

21  "take the fall" for the true robber.  The Court upheld the denial of disclosure because the tipster's

22  motive could not possibly undo the testimony of numerous witnesses who identified the

23  defendant as the bank robber.

24       In *United States v. Decoud*, 456 F.3d 999 (9th Cir. 2006), evidence showed defendant

25  Israel sold drugs to customers at her home.  She also allowed defendant Page, who allegedly ran

26  the drug conspiracy charged in the indictment, to store drugs at her home and introduced Page to

27  her sister as someone who could sell drugs for him.  Defendant Decoud sold and manufactured

28  drugs for Page.  Israel sought disclosure of an informant who did controlled buys from Page and

1  two others to show that the informant had no contact with Israel, a fact the government did not

2  dispute.  In holding that denial of disclosure was not error, the Court noted that the lack of

3  contact between the informant and Israel could have been elicited by stipulation or from

4  testimony of the agent supervising the controlled buys, which defendant refused to accept.  The

5  Court also noted that the "informant's non-knowledge would have done little to refute the

6  government's otherwise persuasive evidence of Israel's affirmative involvement in the

7  conspiracy." *Id*., at 1009.

8      Evidence of Mr. Smith's intent with regard to the crack cocaine he admits he possessed is

9  circumstantial and, as shown herein and in defendant's moving papers, far from overwhelming

10  evidence of guilt.  While the informant is unlikely to be able to provide direct evidence of Mr.

11  Smith's intent, his/her lack of knowledge of Mr. Smith's being involved in selling crack cocaine

12  circumstantially shows his innocence and undoubtedly "weaken[s] the government's case."

13  *United States v. Amador-Galvan*, *supra,* 9 F.3d at 1417. An *in camera* hearing should be ordered

14  to determine whether in fact the informant's testimony would be helpful to the defense.

15              **THE GOVERNMENT'S REMAINING CONTENTIONS**

16      1. The CRI's status as a "tipster."

17      The government correctly asserts that the informant here was not involved in the conduct

18  that is charged in this case.  However, to conclude, as the government does, that "an informant

19  with little or no involvement in the charged criminal acts need not be identified" (OB p. 19-20)

20  vastly overstates the case.  The cases cited by the government show that the determining factor

21  for such informants is whether they could possess information that would be helpful to the

22  defense.

23      In *United States v. Valmer*, 245 Fed. Appx. 720 (9th Cir. 2007), the defendant was

24  charged with six sales of drugs to an undercover officer.  He sought to discover the identity of the

25  person who introduced him to the undercover officer based on a non-specific claim that the

26  informant was relevant to an entrapment defense.  The trial court denied the request **without**

27  **prejudice** to renewing the motion if evidence of entrapment were raised at trial.  The defendant

28  never raised the issue again. Denial of discovery of the informant was thus justified because any

potential testimony from the informant on the stated ground was irrelevant.

In *United States v. Johnson*, 886 F.2d 1120 (9th Cir. 1989), a search warrant was issued based on a purchase of drugs from a residence by a confidential informant using unmarked bills. The search disclosed drugs and guns throughout the residence. Two of the marked bills were found in defendant Curry's car. Curry sought disclosure of the informant to show that the informant hadn't given him the bills. Denial of disclosure was upheld because the testimony sought from the informant was not "essential to fair determination of [the defendant's] cause." *Id.* at 1122.

In *United States v. Buras*, 633 F.2d 1356 (9th Cir. 1980), the defendant, charged with failure to file tax returns, sought the identity of the informant who told the IRS that he hadn't filed taxes on the theory that the informant might have been able to provide information as to whether the failure to file was wilful or in good faith. The Court upheld the denial on the ground that the claim of materiality was supported by nothing other than "unfounded suspicion or conjecture." *Id.,* 1360.

In other cases cited by the government involving "tipsters" where disclosure was denied, the Court nonetheless held *in camera* interviews with the informants and/or police officers before determining that the informant would not be helpful to the defense. See, *United States v. Williams*, 898 F.2d 1400 (9th Cir. 1990), *United States v. Gil*, 58 F.3d 1414 (9th Cir. 1995), and *United States v. Wong*, 886 F.2d 252 (9th Cir. 1989), all discussed above. Thus, there is nothing inherent in the informant's status as not being a witness to the charged criminal activity that precludes disclosure upon a sufficient showing of relevance.

    2. The claim of relevance to the defense is more than mere speculation.

The government claims that Mr. Smith has provided no evidence that the informant knew he did not sell crack cocaine, and that the mere suspicion that he could provide favorable testimony is insufficient to justify disclosure. (OB p. 5:20-25). Once again, this overstates the case. A defendant who does not even know the identity of witness he seeks can never know precisely what the witness will state. Instead, the defendant must make a "minimal threshold showing" that disclosure would be relevant to at least one defense. *United States v. Sai Keung*

*Wong, supra,* 886 F.2d at 256.  The defendant has done so here.

Indeed, the contents of the affidavit in this case show a good deal more than speculation and suspicion.  The informant here told the affiant that Mr. Smith was packaging and discussed selling marijuana.  No mention is made of crack cocaine.  It is reasonable to infer that if the informant had knowledge of Mr. Smith's claimed crack cocaine dealing, he would have said so and the affidavit would reflect such a statement.  This is a good deal more of a fact-based inference than the bare allegations contained in *United States v. Spires*, *supra,* which the Ninth Circuit ruled required an *in camera* hearing.

3. The government interest in nondisclosure.

The government maintains that the important government interest in protecting the identity of its informants outweighs any potential value of the informant in this case.  This ignores the observation of the Court in *United States v. Spires, supra,* 3 F.3d at 1236, that "there is ordinarily no governmental interest to balance against the defendant's in deciding whether to hold an *in camera* hearing."  The time for balancing interests is after an *in camera* hearing if the Court finds the informant's testimony helpful to the defense.

In this context, it is important to recognize the inconsistency in two positions asserted by the government.  On the one hand, the government asserts the need to protect its informants.  On the other hand, the government asserts there is no need to disclose the informant because the defendant surely knows who the informant is.  (OB p. 7:12-16)[5]  If the latter statement is true, the government interest in protecting the informant's identity in this case weighs very little on the scale of disclosure.

///

///

///

///

///

---

[5]Defendant responded to this latter claim *supra*, p. 5.

1

**CONCLUSION**

2          For the reasons set forth herein and in the moving papers, defendant Demetrius Smith

3    grant his motion to disclose the identity of the confidential informant in this case.

4

5    DATED: May 7, 2008                          Respectfully Submitted,

6

7                                          _____/s/_____
                                           MICHAEL P. THORMAN
8                                          Attorney for Demetrius Smith

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28